STATE of Wisconsin, Plaintiff-Respondent,

v.

Daniel D. KING, Defendant-Appellant.†

Court of Appeals

*No. 2004AP2694–CR. Submitted on briefs August 30, 2005.
—Decided September 27, 2005.*

2005 WI App 224

(Also reported in 706 N.W.2d 181.)

† Petition to review denied 12-14-05.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Scott D. Obernberger* of *Obernberger & Associates, LLC*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Daniel D. King appeals from a judgment entered on jury verdicts convicting him, as a

habitual criminal, as party to a crime, *see* W<small>IS</small>. S<small>TAT</small>. §§ 939.62, 939.05, of substantial battery of Chandra T., *see* W<small>IS</small>. S<small>TAT</small>. § 940.19(2), and armed robbery of Chandra T. with threat of force, *see* W<small>IS</small>. S<small>TAT</small>. § 943.32(2). He also appeals from that aspect of the trial court's post-conviction order that upheld these verdicts, claiming that the trial court erroneously received into evidence hearsay assertions of another of his victims, and that this poisoned the jury's ability to return a fair verdict on the two charges involving Chandra T. We affirm.

## I.

¶ 2. King was tried on eleven charges as party to a crime: one count of robbery, three counts of first-degree sexual assault, and one count of substantial battery, involving Shelia J.; and one count of kidnapping, three counts of first-degree sexual assault, one count of armed robbery with threat of force, and one count of substantial battery, involving Chandra T. The jury found King guilty of substantial battery of Shelia J., and, as noted, guilty of substantial battery and armed robbery of Chandra T. The jury acquitted King on all the other charges. The trial court granted part of King's postconviction motion and vacated the substantial-battery conviction involving Shelia J., ruling that King's confrontation rights were violated in connection with that charge. The State does not appeal that ruling.

¶ 3. The charges against King arose out of two incidents, one on November 29, 2002, involving Shelia J., and one on December 7, 2002, involving Chandra T. The State contended that King and his brother raped, robbed, and beat Shelia J., and kidnapped, raped, robbed, and beat Chandra T. Chandra T. testified at the trial. Although Shelia J. testified at the preliminary

examination, she did not testify at the trial, and the trial court received into evidence both her preliminary-examination testimony and what she had told others about the assaults. An assessment of whether the hearsay evidence received in connection with the charges involving Shelia J. prevented the jury from reaching a fair verdict on the charges involving Chandra T. requires that we evaluate that evidence and King's contention, with which the trial court agreed in part, that admission of the hearsay evidence denied King his right to confront his accuser.

## II.

¶ 4. Every defendant in a criminal case is entitled to confront his or her accusers: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This clause applies to the states as well as to the federal government. *Pointer v. Texas*, 380 U.S. 400, 406 (1965). The Wisconsin Constitution also guarantees the right to confrontation: "In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face." WIS. CONST. art. 1, § 7. The two clauses are, "generally," coterminous. *State v. Hale*, 2005 WI 7, ¶ 43, 277 Wis. 2d 593, 607, 691 N.W.2d 637, 644. While the Sixth Amendment has "a preference for face-to-face confrontation at trial," *Ohio v. Roberts*, 448 U.S. 56, 63 (1980), face-to-face confrontation is not "an indispensable element of the Sixth Amendment's guarantee," *Maryland v. Craig*, 497 U.S. 836, 849 (1990) (child sexual-abuse victim may testify by one-way closed-circuit television out of defendant's physical presence).

■ ¶ 5. Although "not all hearsay implicates the Sixth Amendment's core concerns," *Crawford v. Washington*, 541 U.S. 36, 51 (2004), "testimonial" hearsay is not admissible in a criminal trial against a defendant unless: (1) "the defendant had had a prior opportunity for cross-examination," and (2) the hearsay declarant is "unavailable to testify," *id.*, 541 U.S. at 53–54. While the precise parameters of what is "testimonial" hearsay are still in flux, *id.*, 541 U.S. at 68 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.' "), "*ex parte* testimony at a preliminary hearing" and "formal statement[s] to government officers" are within the core, *id.*, 541 U.S. at 51–52. Wisconsin has, "at a minimum," adopted what *State v. Manuel*, 2005 WI 75, ¶ 39, 281 Wis. 2d 554, 577, 697 N.W.2d 811, 822, calls "*Crawford*'s formulations."[1]

---

[1] *State v. Manuel*, 2005 WI 75, ¶ 39, 281 Wis. 2d 554, 577, 697 N.W.2d 811, 822, asserts: "For now, at a minimum, we adopt all three of *Crawford*'s formulations." Two of the "formulations" *Manuel* sets out as *Crawford*'s, however, were phrased by briefs submitted to the United States Supreme Court, not by *Crawford*, and were given by *Crawford* as examples of what it characterized as "[v]arious formulations" of the "core class of 'testimonial' statements." *Crawford v. Washington*, 541 U.S. 36, 51 (2004). *Manuel* quotes the following as one of the "formulations" *Crawford* adopts: " '[E]x parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.' [*Crawford*, 541 U.S.] at 51." *Manuel*, 2005 WI 75, ¶ 37, 281 Wis.2d at 575–576, 697 N.W.2d at 821 (first brackets by *Manuel*). This comes from a brief submitted by Michael Crawford. *Crawford*, 541 U.S. at 51; Brief for the Petitioner at 23, *Crawford v. Washington*, 541 U.S. 36 (2004) (No. 02–9410), 2003

¶ 6. Unavailability for confrontation purposes requires both that the hearsay declarant not appear at the trial and, critically, that the State make a "good-faith effort" to produce that declarant at trial. *Barber v. Page*, 390 U.S. 719, 724–725 (1968); *Roberts*, 448 U.S. at 74 ("[I]f there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obliga-

---

WL 21939940 ("In concrete terms, this rule prohibits the prosecution from introducing ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.").

*Manuel* quotes the following as another of the three formulations *Crawford* adopts: " '[S]tatements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' [*Crawford*, 541 U.S.] at 52." *Manuel*, 2005 WI 75, ¶ 37, 281 Wis. 2d at 576, 697 N.W.2d at 821 (first brackets by *Manuel*). This comes from a brief submitted by the National Association of Criminal Defense Lawyers, the American Civil Liberties Union, and the ACLU of Washington. *Crawford*, 541 U.S. at 52; Brief for the National Association of Criminal Defense Lawyers *et al.* as *Amici Curiae* Supporting Petitioner at 3, *Crawford*, 541 U.S. 36 (No. 02–9410), 2003 WL 21754961 ("In place of *Roberts* this Court should adopt what has been called the 'testimonial' approach. The testimonial approach would prohibit the admission of out-of-court statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial (unless the defendant has the opportunity to confront the witness).").

Without further clarification from the supreme court, we assume that *Manuel* intended to adopt these party-and *amici*-phrased formulations, and we apply them here.

tion of good faith *may* demand their effectuation. 'The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness.' ") (italics in *Roberts*; quoted source omitted); *State v. Gollon*, 115 Wis.2d 592, 600, 340 N.W.2d 912, 916 (Ct. App. 1983). Further, Wisconsin has retained for non-testimonial hearsay the now-limited approach to the hearsay/confrontation interplay set out in *Roberts*, 448 U.S. at 65–66 (hearsay may only be admitted against a defendant in a criminal trial if the declarant is unavailable and the hearsay assertion has sufficient " 'indicia of reliability' ") (quoted source omitted). *Manuel*, 2005 WI 75, ¶¶ 60–61, 281 Wis. 2d at 586–587, 697 N.W.2d at 826–827; *see Crawford*, 541 U.S. at 68 (states may use the *Roberts* approach for non-testimonial hearsay). Thus, and significantly here, the State had to show that Shelia J. was truly unavailable before her non-testimonial hearsay could constitutionally be received into evidence against King. *See Roberts*, 448 U.S. at 65–66, 74–75 (burden on State to show unavailability).

¶ 7. We analyze in this light each of Shelia J.'s pre-trial statements received at the trial, and assess whether admission of statements that should have been excluded violated King's right to a fair trial in connection with Chandra T.

## III.

A. *Shelia J.'s preliminary-examination testimony.*

1.

¶ 8. Shelia J. did not testify at the trial because, according to the State, she could not be located. She did, however, testify at the preliminary examination held to

determine whether King or his then-co-defendant (his brother) should stand trial. She told the court commissioner presiding at the preliminary examination that on November 29, 2002, she was walking in an alley between 6th and Wright Streets in Milwaukee when King and his brother approached her in a car that King was driving. According to her preliminary-examination testimony, the King brothers raped her, beat her, and took her money before she could escape. King's lawyer cross-examined her, and the court commissioner sustained objections to only seven of his questions. Twice King's trial lawyer asked if Shelia J. tried to run before she was assaulted, and once asked if Shelia J. tried to defend herself; the court commissioner sustained "relevance" objections; and neither King's trial lawyer nor King on this appeal makes an offer of proof as to why these issues might have been relevant at the trial. King's trial lawyer also asked whether Shelia J. had been either drinking or using drugs that night; again, the court commissioner sustained "relevance" objections and neither King's trial lawyer nor King on this appeal makes an offer of proof as to why that issue might have been relevant at the trial.

¶ 9. King's lawyer also asked which hand Shelia J. used to get the money she said King took from her. This time, too, the court commissioner sustained a "relevance" objection, and neither King's trial lawyer nor King on this appeal makes an offer of proof as to why that issue might have been relevant at the trial. Finally, the court commissioner sustained a rape-shield-law objection as to whether Shelia J. was "turning tricks" that night. *See* Wis. Stat. § 972.11(2) (rape-shield law). Neither King's trial lawyer nor King on this appeal makes an offer of proof as to why that issue might have been both relevant and admissible at the trial, other

than to contend in passing that King's defense was he had "hired" Shelia J. as a prostitute and that she was beaten by her "pimp." *See State v. Pulizzano*, 155 Wis. 2d 633, 656–657, 456 N.W.2d 325, 335 (1990) (§ 972.11(2) may not constitutionally exclude evidence if the defendant makes "an offer of proof showing: (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect" unless the trial court determines that "the State's interests in excluding the evidence are so compelling that they nonetheless overcome the defendant's right to present it.").

¶ 10. Shelia J.'s preliminary-examination testimony, both her direct-examination by the State and her cross-examination by King's trial lawyer, was read to the jury. Additionally, even though King's brother was not being tried with King, the cross-examination of Shelia J. by the brother's lawyer was also read to the jury.

2.

■

¶ 11. As we have seen, testimonial hearsay evidence may only be received against a defendant in a criminal case if: (1) the witness is unavailable, and (2) "the defendant had had a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 53–54. The opportunity for cross-examination must, of course, be meaningful. *See State v. Stuart*, 2005 WI 47, ¶¶ 30–37, 279 Wis. 2d 659, 673–675, 695 N.W.2d 259, 265–267. The trial court held that Shelia J. was "unavailable."

Whether a hearsay declarant is unavailable "for confrontation purposes, is a constitutional fact." *Gollon*, 115 Wis. 2d at 601, 340 N.W.2d at 916. Thus, our review is *de novo. See id.*, 115 Wis. 2d at 600, 340 N.W.2d at 916; *State v. McBride*, 187 Wis. 2d 409, 414, 523 N.W.2d 106, 109 (Ct. App. 1994). As explained below, we agree with King that Shelia J. was not "unavailable" for confrontation purposes. Accordingly, we do not address whether King's opportunity to cross-examine Shelia J. at the preliminary examination was meaningful. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

¶ 12. In seeking a ruling that Shelia J. was unavailable to testify at the trial, the State told the trial court that it had sent a process-server "to her residence seven times" but that the address was wrong, and that the process-server then twice went to what the State said was the correct address, where "the resident there who is a family member who indicated that she does come by now and again, but that she doesn't live there, and a card was left for her." The State also represented that "the victim advocate in this case" went to "the residence two times at the end of last week, spoke with the victim's grandmother at the residence, left a letter for her." The State said that "[t]he grandmother indicated that she has seen Shelia; she talked to her about her coming to the jury trial," but that "[s]he does not want to come, that she's afraid and apprehensive and that she believes she didn't have to come if she didn't get a subpoena. She has not been served with a subpoena."

766

¶ 13. It appears from the Record, however, that a subpoena *could have* been served on Shelia J. because, as the State told the trial court, a Milwaukee detective "went to her residence over the weekend on Saturday. He did speak with Shelia J[]. She had the letter from the victim-advocate. She also indicated she was fearful and apprehensive about coming to the trial, but she indicated that she would call our office this week. She has not called."

¶ 14. The State also represented to the trial court that additional efforts to get Shelia J. to testify at the trial were made the previous day.

> Again, yesterday, we made contact with both her mother and her grandmother. Her mother indicated that she would continue to try to look for her, that if she contacted her she would ask her again to please call our office, and she hasn't.

> I believe [another detective] went out yesterday late afternoon again to the residence to see if Miss J[] was there and could be persuaded to come to the trial, and I don't believe she met with success.

¶ 15. The trial court concluded that the State's efforts to secure Shelia J.'s in-court testimony complied with Wis. Stat. Rule 908.04(1)(e) (" 'Unavailability as a witness' includes situations in which the declarant: . . . Is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means."). The trial court opined: "Process was attempted. A number of other means were attempted to secure Miss J[]'s presence. She has not been able to be found. Appears to have absented herself from such a process or appear here in court. That would make her unavailable." The trial court did not make a separate

confrontation-analysis of whether the State's efforts complied with King's confrontation right to see, hear, and question Shelia J. at his trial. Also, rather than hold an evidentiary hearing at which the process-server, the victim-advocate, and the detectives could testify about what they did to secure Shelia J.'s attendance at the trial, *see* WIS. STAT. RULE 901.04(1) ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the judge."), the trial court relied on the State's representations. King's trial lawyer did not object, and King does not on this appeal contend that his lawyer was ineffective as a result. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984) (defendant in criminal case deprived of constitutional right to counsel if both the lawyer was deficient in his or her representation and the defendant was thereby prejudiced). Accordingly, we use the State's representations in analyzing whether Shelia J. was unavailable for confrontation purposes. We conclude that she was not.

¶ 16.　First, the State conceded that its process-server had Shelia J.'s wrong address for seven of the attempts at service. Second, a detective found Shelia J. and spoke with her after the victim-advocate learned that Shelia J., as phrased by the State in its representation to the trial court, "believes she didn't have to come if she didn't get a subpoena." Yet, the detective did not then serve Shelia J., but, apparently, merely asked Shelia J. to call the district attorney's office. Attempting to, in the State's word, "persuade" a reluctant witness, either directly or through relatives, to come to court is not sufficient when a subpoena could have and should have been served. The district attorney may sign and issue a subpoena "to require the attendance of witnesses." WIS. STAT. § 885.01(2). "Any subpoena may be served by any person by exhibiting and reading it to the

witness, or by giving the witness a copy thereof, or by leaving such copy at the witness's abode." WIS. STAT. § 885.03. Further, "[i]nexcusable failure to attend any court of record is a contempt of the court," WIS. STAT. § 885.11(3), and "[e]very court . . . may issue an attachment to bring such witness before it for the contempt, and also to testify," § 885.11(2).

■

¶ 17. To quote *Gollon*'s reflection in a related context, whether a hearsay declarant is constitutionally unavailable "is too important" to be satisfied by going-through-the-motions efforts; rather, the efforts must be adapted to the circumstances and must be unstinting. *See id.*, 115 Wis. 2d at 601, 340 N.W.2d at 916. Indeed, even under the lower non-constitutional standard of WIS. STAT. RULE 908.04(1)(e), the party seeking to introduce an out-of-court declarant's hearsay assertions "must 'specify the facts showing diligence' and not rely on 'a mere assertion of perfunctory showing of some diligence.' " *State v. Williams*, 2002 WI 58, ¶ 63, 253 Wis. 2d 99, 127, 644 N.W.2d 919, 933 (quoted source omitted). Not serving Shelia J. with a subpoena when that was possible and when that step was a foreseeable potential condition to her presence at trial was not reasonable, and does not reflect the constitutionally required good-faith effort to secure King's right to confront his accuser. Accordingly, the State has not demonstrated that Shelia J. was constitutionally unavailable, and the trial court erred in permitting the jury to hear her preliminary-examination testimony. *See Crawford*, 541 U.S. at 54.

B. *Statements by Shelia J. to Detective Geri Lynn Gahagan.*

¶ 18. Detective Geri Lynn Gahagan interviewed Shelia J. at the hospital to which Shelia J. had been

taken some one-and-one-half hours earlier, and where she was being treated for her serious injuries. The trial court received Gahagan's recitation of what Shelia J. told her during that interview under the excited-utterance exception to the rule against hearsay, Wis. Stat. Rule 908.03(2) ("The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."). Shelia J. told Gahagan essentially what Shelia J. later testified to at the preliminary examination. In its post-trial order, the trial court recognized that under *Crawford*, which was issued after King's trial, Shelia J.'s statements to Gahagan were " 'testimonial' " because they were given in response to "structured police questioning." We agree. *See Crawford*, 541 U.S. at 52, 53, 68 ("Statements taken by police officers in the course of their interrogations are also testimonial"; "interrogations by law enforcement officers" are testimonial); *Manuel*, 2005 WI 75, ¶ 38, 281 Wis. 2d at 576, 697 N.W.2d at 821. As a consequence of its analysis, and, as we see later, its view that the jury should not have been told that Shelia J. identified King at a lineup, the trial court overturned the jury's conviction of King as it related to Shelia J. As noted, the State has accepted the trial court's determination.

C. *Statements by Shelia J. to Police Officer John Graber.*

¶ 19. Shortly after Shelia J.'s escape from the King brothers, Officer John Graber was sent to the house where she had sought refuge. He found her injured, bloody, and crying, and she told him what had happened. The trial court permitted Graber to relate to

the jury what Shelia J. had told him.[2] In its postconviction decision and order, the trial court opined that this was not error under *Crawford* because, in its view, what Shelia J. told Graber was not testimonial: "The statements that the victim [Shelia J.] made at that time were for purposes of relating to the officers 'what happened' and to give them a description of the suspects" so they could seek their apprehension. We need not analyze whether what Shelia J. told to Graber was testimonial because, as we have seen, absent unusual circumstances, unavailability is a confrontation-prerequisite under the pre-*Crawford Roberts* analysis. *See Manuel*, 2005 WI 75, ¶ 60, 281 Wis. 2d at 586, 697 N.W.2d at 826 (adopting *Roberts* for non-testimonial hearsay). We have already determined that Shelia J. was not unavailable. Accordingly, letting the jury hear what she told Graber violated King's right to confrontation.

D. *Statements by Shelia J. to Nurse Debra Donovan.*

¶ 20. The trial court also permitted Debra Donovan, a forensic nurse at the Aurora Sinai Medical Center Sexual Assault Treatment Center, to tell the jury what Shelia J. told her during Donovan's examination of her. Shelia J. had arrived at the Center at approximately 12:30 a.m. on November 30, 2002, some two hours after the King brothers assaulted her. The

---

[2] Although King's trial lawyer did not object specifically to Officer Graber's recitation of what Shelia J. told the officer, the trial court in its postconviction decision and order determined that the lawyer had sufficiently preserved the point by the lawyer's objection that, as phrased by the trial court, "the admission of similar evidence would violate the Confrontation Clause, and the continuing nature of that objection." The State does not on this appeal dispute that ruling.

testimony essentially tracked Shelia J.'s preliminary-examination testimony. In its postconviction decision and order, the trial court determined that what Shelia J. told Donovan that morning was not testimonial because, as phrased by the trial court, "Ms. Donovan is not part of law enforcement, and the primary purpose of her questions was to aid in medical diagnosis and treatment." As with Graber's testimony, we need not evaluate whether what Shelia J. told Donovan was testimonial because, as we have already held, Shelia J. was not unavailable. Accordingly, letting the jury hear what Shelia J. told Donovan violated King's right to confrontation.

E. *Shelia J.'s identification of King at a lineup.*

¶ 21. The trial court also permitted Police Detective Vickie Hall to testify at King's trial that Shelia J. had identified King at a lineup as one of her attackers. In its postconviction decision and order, the trial court held that this was error under *Crawford* because it was an "[i]nquisitorial interaction" "between a law enforcement official" and a hearsay declarant.[3] The State does not on this appeal challenge that ruling.

**IV.**

¶ 22. As we have seen, the trial court vacated King's one-count conviction involving Shelia J., but

---

[3] Although King's trial lawyer did not object specifically to Detective Hall's testimony about Shelia J.'s identification of King at the lineup, the trial court in its postconviction decision and order determined that the lawyer had sufficiently preserved the point by the lawyer's objection that, as phrased by the trial court, "the admission of similar evidence would violate the Confrontation Clause, and the continuing nature of that objection." The State does not on this appeal dispute that ruling.

King contends that letting the jury hear the testimony we have discussed poisoned the jury's ability to fairly assess the charges against him involving Chandra T. The trial court held in its postconviction decision and order that errors involving the State's case against King involving Shelia J. were harmless beyond a reasonable doubt in connection with Chandra T. *See State v. Hale*, 2005 WI 7, ¶ 60, 277 Wis. 2d 593, 612–613, 691 N.W.2d 637, 647. Whether an error is harmless is a legal issue subject to our *de novo* review. *See State v. Carnemolla*, 229 Wis. 2d 648, 653, 600 N.W.2d 236, 239 (Ct. App. 1999). *Hale* sets the significant considerations:

> this court has articulated several factors to aid in the analysis, including the frequency of the error, the importance of the erroneously admitted evidence, the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence, whether the erroneously admitted evidence duplicates untainted evidence, the nature of the defense, the nature of the State's case, and the overall strength of the State's case.

*Hale*, 2005 WI 7, ¶ 61, 277 Wis. 2d at 613, 691 N.W.2d at 647. We analyze King's convictions involving Chandra T. in this light.

¶ 23. First, as the trial court recognized, the two series of attacks were not only on different women, but also on different days. Second, unlike the situation with Shelia J., Chandra T. testified at the trial and was subject to full cross-examination. Third, there was no overlap between the evidence improperly received against King involving Shelia J. and the State's case against Chandra T. Fourth, although the prosecutor tied the two crimes together in her closing argument, the trial court specifically told the jury that it had to consider separately each of the charges against King. As

the trial court recognized, the jury was apparently able to analyze separately the evidence involving each of the charges against King because "it acquitted the defendant on 8 of the 11 separate charges he faced." Fifth, and, perhaps, most significant, there was direct physical evidence linking King and Chandra T.: her blood was found in his car, King's semen was found on Chandra T.'s buttocks and underwear, and King admitted that both he and his brother had sex with her that night. Errors in receiving Shelia J.'s hearsay assertions did not, beyond a reasonable doubt, infect the jury's ability to give to King a fair trial in connection with Chandra T. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.