COURT OF APPEALS
DECISION
DATED AND FILED

July 15, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP829-CR**

Cir. Ct. No. **2017CF1770**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LAMARDUS DEWAYNE FORD,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Rock County: JOHN M. WOOD, Judge. *Affirmed*.

Before Blanchard, Kloppenburg, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Lamardus D. Ford appeals a judgment of conviction and an order denying Ford's postconviction motion. Ford contends that: (1) there was insufficient evidence to support his conviction for first-degree recklessly endangering safety; and (2) his constitutional right to confrontation was violated when the circuit court allowed the State to introduce out-of-court statements at trial under the forfeiture by wrongdoing doctrine. For the reasons set forth in this opinion, we disagree. We affirm.

¶2     Ford was charged with two counts of first-degree recklessly endangering safety, possession of a firearm by a felon, disorderly conduct, obstructing an officer, and two counts of intimidating a witness. These charges were based on an event in which gun shots were fired on a street in Beloit, striking a residence and a church. Ford was also charged with obstructing an officer and two counts of misdemeanor intimidation of a witness based on events in the following months.

¶3     The first count of recklessly endangering safety was connected to the shot that struck the outside of the residence, and the second was connected to the shot that struck the outside of the church. The recklessly endangering safety count as to the residence alleged that Ford had endangered the safety of J.K.L., who was inside the residence at the time of the shooting. The other count, related to the church, stated that Ford had endangered the safety of "another." According to the criminal complaint, the shooting occurred around 2:00 a.m., and when police arrived there were people gathered on the street. Police spoke with multiple witnesses, including Ford's girlfriend, T.U.H., and her children, A.D.H. and T.J.H. T.U.H. and A.D.H. told police that Ford was present at the time of the shooting, and T.J.H. implicated Ford as the shooter.

¶4 Prior to trial, the State moved to admit hearsay statements by T.U.H, A.D.H., and T.J.H. based on the forfeiture by wrongdoing doctrine in the event that those witnesses did not appear at trial. In support, the State submitted transcripts of recorded jail phone calls between Ford and T.U.H. Ford objected, arguing that he had not dissuaded any witnesses from appearing to testify at trial. At a hearing on the State's motion, the State played portions of the recorded calls between Ford and T.U.H. The circuit court withheld its ruling until trial so that it could first determine whether any of the witnesses failed to appear.

¶5 T.U.H. and A.D.H. appeared at trial, but T.J.H. failed to appear. The State submitted additional transcripts of recorded jail phone calls between Ford and T.U.H., and it argued that T.J.H.'s hearsay statement implicating Ford as the shooter should be admitted. Ford argued that there was no evidence that he had taken any action to prevent T.J.H. from testifying.

¶6 The circuit court determined that T.J.H.'s out-of-court statements implicating Ford as the shooter were admissible based on forfeiture by wrongdoing. In reaching that determination, the court found that Ford was a contributing factor in T.J.H. failing to appear at trial, and that he intended that result. The court found that, during his phone calls with T.U.H., Ford had made statements in which he encouraged witnesses to "plead the fifth," claim their statements had been coerced, or claim that they had been intoxicated and did not remember the events. The court noted that Ford had complained to T.U.H. about people providing statements to police, and also that he said that the State might not have any witnesses. The court found that the tone of Ford's and T.U.H.'s voices showed that Ford was the dominant personality in the conversation, and that Ford had the opportunity and ability to influence the availability of the witnesses.

¶7    The jury found Ford guilty on all of the charges except the recklessly endangering safety count related to the residence. Ford appeals.[1]

¶8    Ford contends that the evidence was insufficient to support his conviction for the court of recklessly endangering safety related to the church. He points to the absence of evidence that there was anyone present inside or near the church at the time of the shooting, and he argues that no one's safety could have been endangered when bullets struck the outside of the church.[2]

¶9    The State responds that the evidence was sufficient to support the conviction. It points to evidence that Ford fired multiple shots on a residential street around 2:00 a.m., while others were present. It argues that a reasonable jury could have found that Ford knew that shooting a gun on a residential street when others were present created an unreasonable and substantial risk of death or great bodily harm to another person, and that when he shot the gun he acted without any regard for human life. *See* WIS JI—CRIMINAL 1345. It also disputes Ford's contention that the evidence was insufficient because no one was inside or near the church, pointing out that the jury did not find Ford guilty of shooting a gun inside the church but rather shooting a gun on the crowded street on which the church was located.

---

[1] Ford appeals the judgment of conviction and an order denying postconviction relief. However, he does not pursue any issues decided by the order addressing the postconviction motion, and we therefore deem those arguments abandoned.

[2] Ford also argues that, because the jury found Ford not guilty of the shooting related to the residence even though a person was inside the residence during the shooting, the jury could not have found Ford guilty of the shooting related to the church. However, when considering the sufficiency of the evidence to support the count for which Ford was convicted, we do not consider the jury's decision as to the other count. *See* ***State v. Rice***, 2008 WI App 10, ¶2, 307 Wis. 2d 335, 743 N.W.2d 517 ("[W]hether the evidence is sufficient to support a conviction is decided independently of jury verdicts on related charges.").

¶10 We review the sufficiency of the evidence to support a conviction for whether "the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *See* **State v. Poellinger**, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). We will uphold a conviction "[i]f any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt." *Id.*

¶11 We conclude that the jury could have drawn the reasonable inference that, by shooting a gun on a street while others were present, Ford created an unreasonable and substantial risk of death or great bodily harm to another person, without any regard for human life, regardless of whether there was evidence that anyone was located inside or near the church. We are not persuaded that the evidence was insufficient to support the conviction based on the lack of evidence as to the presence of anyone inside or in close proximity to the church. Viewing the evidence in the light most favorable to the conviction, as we must, we conclude that the evidence before the jury was sufficient to sustain its verdict.

¶12 Ford separately contends that his constitutional right to confrontation was violated when the circuit court allowed the State to introduce T.J.H's out-of-court statements at trial. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him [or her]." U.S. CONST. amend. VI. The Confrontation Clause applies to the states through the Fourteenth Amendment. **Pointer v. Texas**, 380 U.S. 400, 403 (1965). The Supreme Court has held that, pursuant to the Confrontation Clause, admission of the prior testimony of a witness against a defendant is allowed only if the witness is

unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

¶13 However, the forfeiture by wrongdoing doctrine provides an exception to the Confrontation Clause. *Giles v. California*, 554 U.S. 353, 359 (2008). Under the forfeiture by wrongdoing doctrine, a court may allow introduction of "statements of a witness who is 'detained' or 'kept away' by the 'means or procurement' of the defendant." *Id.* (citations omitted). The doctrine is based on equitable grounds and arises from "public policy against a defendant profiting from his or her own wrongdoing." *Baldwin*, 2010 WI App 162, ¶35, 330 Wis. 2d 500, 794 N.W.2d 769. Thus, "[u]nder the forfeiture by wrongdoing doctrine, a defendant forfeits [the] Sixth Amendment right to confront a witness when the defendant wrongly procures that witness' unavailability by conduct designed to prevent the witness from testifying." *State v. Reinwand*, 2019 WI 25, ¶14, 385 Wis. 2d 700, 924 N.W.2d 184.

¶14 For the forfeiture by wrongdoing doctrine to apply, the State must prove by a preponderance of the evidence "that the defendant prevented the witness from testifying" and "that the defendant intended to prevent the witness from testifying." *See Baldwin*, 330 Wis. 2d 500, ¶¶37-39 (emphasis omitted). Additionally, the witness must have been "[u]navailab[le] for confrontation," which requires that the witness did not appear at trial despite the State's "'good faith effort' to produce that declarant at trial." *See State v. King*, 2005 WI App 224, ¶6, 287 Wis. 2d 756, 706 N.W.2d 181 (quoted source omitted).

¶15 Although a circuit court's decision to admit evidence is ordinarily discretionary, whether the admission of evidence violates a defendant's right to confrontation is a question of law subject to our independent review. *Baldwin*,

330 Wis. 2d 500, ¶30. As part of our review, we accept the circuit court's findings of fact unless they are clearly erroneous. *Id.*

¶16 Ford contends that the facts before the circuit court did not support its application of the forfeiture by wrongdoing doctrine. Ford does not argue that the State failed to make a good faith effort to produce T.J.H. at trial. Ford challenges only the circuit court's findings that he prevented T.J.H. from testifying and that he intended to do so.

¶17 First, Ford contends that there was no evidence to support a finding that Ford caused T.J.H. not to appear at trial. Ford points to evidence that T.J.H. may have been homeless, and argues that it was unreasonable for the circuit court to assume that T.U.H. had any ability to contact her son on Ford's behalf prior to trial. He contends that a more reasonable inference would have been that T.J.H. would not have had money to pay for a phone. He contends that, without any evidence that Ford or T.U.H. were able to contact T.J.H., there was no evidence that Ford could have dissuaded T.J.H. from testifying at Ford's trial. Ford points out that the only specific mention of T.J.H. in the recorded jail calls was Ford's statement to T.U.H that Ford's attorney believed that Ford would be "better off [if T.J.H. is] available to show up [at trial]." According to Ford, that statement showed that he had no control over T.J.H.'s actions because, he asserts, if he did have an ability to influence T.J.H.'s actions, that statement would have resulted in T.J.H. appearing at trial.

¶18 In reviewing the circuit court's factual findings, the question before us is not whether the evidence would have supported other factual findings or reasonable inferences, but whether Ford has shown that the court's factual findings and the inferences it drew were clearly erroneous. *See Outagamie Cnty. v.*

7

*Melanie L.*, 2013 WI 67, ¶38, 349 Wis. 2d 148, 833 N.W.2d 607 ("We will not disturb a circuit court's factual findings unless they are clearly erroneous. We accept reasonable inferences from the facts available to the circuit court."). "[A] factual finding is not clearly erroneous merely because a different fact-finder could draw different inferences from the record." *State v. Wenk*, 2001 WI App 268, ¶8, 248 Wis. 2d 714, 637 N.W.2d 417.

¶19    Here, a common-sense interpretation of the recorded phone calls supports the circuit court's finding that Ford encouraged T.U.H. to ensure that the witnesses did not testify or did not inculpate Ford in the shooting. Among other things, Ford told T.U.H. that it was "great" that A.D.H. had told police that she could not remember what had happened on the night of the shooting, and that other witnesses could do the same at the upcoming preliminary hearing. Ford told T.U.H. that witnesses could "plead the fifth" and "answer nothing."

¶20    Although one inference that could have been drawn from the evidence of T.J.H.'s homelessness may have been that T.U.H. had no way to contact T.J.H. to convey Ford's message, we do not agree with Ford that that was the only reasonable inference the circuit court could have drawn. Rather, we conclude that the inference that the court did draw—that Ford had the opportunity to influence whether T.J.H. appeared at trial—was also reasonable. The court could have reasonably inferred that, as his mother, T.U.H. would have had the ability to contact T.J.H. by some means, regardless of his homelessness.

¶21    Nor are we persuaded that the statement by Ford that his attorney believed it would be better for Ford if T.J.H. appeared at trial, together with T.J.H.'s subsequent failure to appear, leads to the necessary finding that Ford had no ability to influence T.J.H.'s actions. As the State points out, Ford did not make

8

an unambiguous statement that he wanted T.J.H. to appear and testify at this trial. Rather, he related what he purported to be his attorney's theory that the State would be able to introduce T.J.H.'s statement even if T.J.H. did not appear, after which Ford said, "Now I don't … know what to do." It undermines Ford's argument that he does not point to an unequivocal statement that he made to T.U.H. that T.J.H. should appear for trial. The circuit court was not required to find on these facts that Ford had no ability to influence T.J.H.'s actions.

¶22 Second, Ford contends that there were no facts to support the circuit court's finding that Ford intended to dissuade T.J.H. from testifying at trial. Ford argues that he would have had every reason to want T.J.H. to appear at trial so that he could exercise his right of confrontation, believing that T.J.H.'s statements would be admitted into evidence if T.J.H. failed to appear.

¶23 We disagree with Ford's contention that there was no supporting evidence for the circuit court's finding that Ford intended to cause T.J.H. not to testify at trial. The court relied on Ford's complaints about witnesses speaking to police, his references to the option for witnesses to "plead the fifth" or deny remembering the events, and his statements such as the possibility that the State would have no witnesses, together with consideration of the tone of voices on the phone calls, in finding that Ford's intent was to dissuade T.J.H. from testifying. For all these reasons, we have no basis to disturb the court's finding.

¶24 In sum, based on the circuit court's factual findings, which Ford has not shown are clearly erroneous, we conclude that the State established by a preponderance of the evidence that Ford caused T.J.H. not to testify at trial and that Ford intended to prevent T.J.H. from testifying.

9

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).