STATE of Wisconsin, Plaintiff-Respondent,

v.

Alvin M. MOORE, Defendant-Appellant.†

Court of Appeals

*No. 2004AP3227–CR. Submitted on briefs December 27, 2005.
—Decided March 21, 2006.*

## 2006 WI App 61

(Also reported in 713 N.W.2d 131.)

† Petition to review denied 6-14-06.

101

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donna L. Hintze*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Jeff Greipp*, assistant district attorney and *E. Michael McCann*, district attorney and *Aaron R. O'Neil*, assistant attorney general and *Peggy A. Lautenschlager*, attorney general.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J.[1] Alvin M. Moore appeals from a judgment of conviction for fourteen counts of attempting to intimidate a witness,[2] contrary to Wis. Stat. § 940.42 (2001–02),[3] and from an order denying his motion for postconviction relief. Moore contests thirteen of the fourteen counts. He contests six of the

---

[1] On June 7, 2005, this case was converted from a one-judge appeal to a three-judge appeal pursuant to Wis. Stat. § 809.41(3) (2003–04). The attorney general elected to participate and filed a supplemental brief.

[2] Although the statute is generally referred to as prohibiting witness "intimidation," it actually proscribes preventing or dissuading a witness from testifying. Because of the common reference to such conduct as witness intimidation, we use that phrase.

[3] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted. Wisconsin Stat. § 940.42 has not been amended since Moore was charged, so we will consider the 2003–04 version of that statute.

counts on grounds that they are multiplicitous, and seven of the counts on grounds that there was insufficient evidence that he attempted to intimidate one of the witnesses. We reject his arguments and affirm the judgment and order.

## DISCUSSION

¶ 2. This is one of three cases involving Moore that were consolidated for a jury trial.[4] Moore was charged with misdemeanor battery of Theresa Posey ("Theresa") and her fourteen-year-old daughter, Tamika Posey ("Tamika"). While awaiting trial, Moore wrote numerous letters to Theresa. Seven of these letters, written between January 16, 2002, and February 9, 2002, indicated that the charges against him would be dismissed if Theresa and Tamika failed to show up in court. One letter stated: "Now all I need is for you and Tamikia, to continue not to show up in any and all court dates concerning us. I will handle the rest."[5] Another stated:

> I am in here facing a felony case . . . . I have to go in front of a trial judge, and fight this case clean-up to a jury trial before it is dismissed. And the only way it can be dismissed if you and Tamkia never show up in court . . . .

---

[4] Moore's appeals of the other two cases were the subject of a no-merit report in case number 2003AP2267–CRNM. On May 27, 2004, this court accepted the no-merit report and summarily affirmed the convictions in those two cases. A subsequent petition for review was denied. This opinion will not address issues related to those two cases. However, information concerning those crimes is mentioned briefly for purposes of providing background.

[5] All letters are quoted precisely, including spelling and punctuation.

. . . .

> Please don't sign any papers or allow her *to sign* any papers and I can get out of this shit and come home.

A third letter stated:

> You and Tamika, haven't sign any papers or been to any court regarding this shit. Either do my family plan on showing up within any courtroom concerning our family business . . . . They have nothing baby. Nothing at all, as long as you and Tamkia Don't sign shit or show up in court I'll be coming home without a doubt . . . . Baby, they don't have nothin without you two ladies. I don't have no other cases. This is the only case I have. Boo, don't allow them to play a mind game with you. No show in court, no sign papers stating that you and Tamkia, want to press charges means no case.
>
> All it takes is for us to ride with out, and only allow me to show up in any courtroom concerning us baby. I got this in here, you and the kids set back and keep the door close don't answer it if not sure who it is. And if they do get a chance to serve you papers don't sign them and if you do sign you still do not have to show up in court . . . .

¶ 3. Based on the seven letters, Moore was charged with intimidation of a witness, contrary to Wis. Stat. § 940.42, which provides: "Except as provided in s. 940.43, whoever knowingly and maliciously prevents or dissuades, or who attempts to so prevent or dissuade any witness from attending or giving testimony at any trial, proceeding or inquiry authorized by law, is guilty of a Class A misdemeanor." *Id.* Specifically, Moore was charged with seven counts of attempting to dissuade Theresa from attending or giving testimony at a court proceeding and trial, and seven counts of attempting to dissuade Tamika from attending or giving testimony at

a court proceeding and trial.[6] Thirteen of those fourteen counts are at issue in this appeal; Moore concedes his liability for one count of attempting to dissuade Theresa from testifying.

¶ 4.  In addition to writing to Theresa, Moore placed several telephone calls to Theresa, which led to additional charges of intimidating a witness and solicitation to commit perjury. The cases were consolidated for trial.

¶ 5.  At trial, both Theresa and Tamika testified. Their testimony with respect to Moore's letters included having Theresa read portions of the letters to the jury. Tamika, who was fifteen years old at the time of trial, testified only as to the incident where Moore slapped her in the face, which led to the charge of physical abuse of a child. The jury found Moore guilty of all counts.

¶ 6.  With respect to the fourteen counts of intimidation of a witness, the trial court convicted Moore and sentenced him to nine months in the House of Correction on each of the fourteen counts. The sentences in the seven odd-numbered counts relating to Theresa were made consecutive to each other and to the sentences in the two other cases. The remaining even-numbered counts relating to Tamika were made concurrent to the odd-numbered counts.

¶ 7.  Moore filed a motion for postconviction relief seeking dismissal of thirteen of the convictions for intimidation of a witness. The motion was denied without a hearing and this appeal followed.

---

[6] Because Moore was not charged with attempting to *prevent* Theresa and Tamika from testifying, this opinion will focus solely on whether there was sufficient proof that Moore attempted to *dissuade* them from testifying.

## DISCUSSION

¶ 8. Moore raises two issues on appeal: (1) whether there was sufficient evidence to convict him of attempting to dissuade Tamika from attending or giving testimony at trial, given that the letters were not addressed to her; and (2) whether the seven counts charged with respect to both Theresa and Tamika are multiplicitous because the legislature intended that all attempts to convince a witness not to appear in court be prosecuted as a single offense. We address each in turn.

### A. Sufficiency of the evidence

■

¶ 9. Moore argues that there was insufficient evidence to convict him of attempted intimidation of Tamika. In reviewing the sufficiency of the evidence, we will "not reverse a conviction unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt."[7] *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

---

[7] The State points out that because the facts are undisputed, Moore is actually challenging whether his actions fulfill the elements of attempted witness intimidation under Wis. Stat. § 940.42. Thus, the State contends that the question presented is one of statutory interpretation, subject to our *de novo* review. *See State v. Perry*, 215 Wis. 2d 696, 707, 573 N.W.2d 876 (Ct. App. 1997) (appellate review is *de novo* where defendant nominally attacked the sufficiency of the evidence to support a finding of guilt but was actually challenging the trial court's interpretation of a statute and its application to largely undisputed facts). Whether we apply a deferential or *de novo*

¶ 10. To prove attempted intimidation of Tamika, the State was required to prove that: (1) Tamika was a witness; (2) Moore attempted to dissuade her from attending a proceeding or giving testimony at a proceeding authorized by law; and (3) Moore acted knowingly and maliciously. *See* WIS JI—CRIMINAL 1292 (2000). The pattern jury instruction further suggests a definition of attempt:

> Attempt requires that the defendant intended to (prevent) (dissuade) (name of victim) from attending or giving testimony and did acts which indicated unequivocally that the defendant had that intent and would have (prevented) (dissuaded) (name of victim) from attending or giving testimony except for the intervention of another person or some other extraneous factor.

*Id.* The instruction defines "dissuade" as " 'to advise against' or 'to turn from by persuasion.' " *Id.* (quoting WEBSTER'S NEW COLLEGIATE DICTIONARY).

¶ 11. To explain why the evidence does not support a conviction for attempted intimidation of Tamika, Moore contrasts the facts as they relate to Theresa and Tamika. Moore admits that there was sufficient evidence to prove that he attempted to intimidate Theresa, explaining:

> Mr. Moore wrote seven letters to [Theresa] in which he asked or directed her not to come to court. This evidence was sufficient to prove both that Mr. Moore had an intent to commit the offense of intimidation of a witness with respect to Theresa, and that he took acts which demonstrate unequivocally that he would not have desisted from the crime of his own free will. The

standard of review to the facts here, we conclude that there is sufficient evidence to support the convictions.

fact that Theresa decided to act contrary to his wishes and testify was the intervention of another person which prevented the crime from being completed . . . . The evidence established an attempt to prevent or dissuade Theresa from coming to court to testify at trial.

(Citation omitted.)

¶ 12.   In contrast, Moore argues, there is no evidence that he made any attempt to contact Tamika directly, and thus he is not guilty of attempted witness intimidation. He states:

> The only evidence introduced at trial of an attempt to intimidate Tamika, to dissuade or prevent her from testifying at trial, came in the form of the letters to *Theresa*. Granted, in those letters Mr. Moore asked and/or directed that both Theresa and Tamika not come to court and stated that he believed his case would have to be dismissed if they did not appear. However, there is no evidence that Tamika was ever shown or even apprised of the letters. In short, Mr. Moore performed no acts which indicated unequivocally that he would commit the crime of intimidation of a witness with respect to Tamika except for the intervention of another person or some extraneous factor.
>
>     . . . .
>
> It is anticipated the state will argue, as it did below, that the evidence was sufficient to prove Mr. Moore attempted to intimidate Tamika as Tamika was the minor child of Theresa and Mr. Moore attempted to prevent Tamika from appearing through Theresa. That is, that he asked Theresa to prevent Tamika from coming to court. Such an argument must fail as an individual may not be held responsible for an attempt made through a third party unless the third party actually acts in furtherance of the attempt. That is, that the third party fulfilled the "conduct" element for

110

attempt. Here there is no evidence Theresa undertook any action to prevent or dissuade Tamika from coming to court. Thus, at most, Mr. Moore solicited Theresa to commit the offense of intimidation of a witness as to Tamika, and no attempted intimidation occurred.

¶ 13.  Underlying Moore's argument is his assumption that the State had to prove that Tamika was shown, or apprised of, the letters before Moore could be found guilty.[8] Under the circumstances of this case, we disagree. Regardless of whether the letters were addressed to Tamika or whether she was aware of their contents, it is obvious that Moore attempted to dissuade Tamika through her mother, Theresa. Theresa, as the parent of the minor child, had the parental responsibility and practical authority to monitor communications by third parties with her child, and to influence whether Tamika cooperated with the court proceedings. We conclude that there was sufficient evidence to convict Moore of attempting to intimidate Tamika.

## B. Multiplicity

¶ 14.  Moore argues that, at most, he is guilty of one count of attempted witness solicitation for each witness, Theresa and Tamika. He contends that the charges are multiplicitous, and that six counts for each witness should therefore be dismissed.

---

[8] Moore also assumes that the reason he was charged with attempting to dissuade, as opposed to dissuading, Tamika was that Tamika ultimately did testify. The State does not appear to quarrel with this assumption. We will likewise assume for purposes of this opinion that because Tamika chose to testify, Moore was appropriately charged with attempting to dissuade her from testifying.

111

¶ 15.  Charges are multiplicitous if they charge a single criminal offense in more than one count. *State v. Grayson*, 172 Wis. 2d 156, 159, 493 N.W.2d 23 (1992). Claims of multiplicity are analyzed using a two-prong test that requires examination of: (1) "whether the charged offenses are identical in law and fact;" and (2) if they are not, "whether the legislature intended the multiple offenses to be brought as a single count." *State v. Anderson*, 219 Wis. 2d 739, 746, 580 N.W.2d 329 (1998).

¶ 16.  If, applying the first step of the analysis, a court determines that the charges are identical in law and fact, then the charges are multiplicitous and violate constitutional double jeopardy protections. *State v. Trawitzki*, 2001 WI 77, ¶¶ 20–21, 244 Wis. 2d 523, 628 N.W.2d 801. If the charges are not identical in law and fact, no constitutional violation exists, but the court must still determine if the legislature intended multiple punishments for the same offenses. *Id.*, ¶¶ 20–22. If the legislature intended the charges to be brought as a single count, separating them into multiple counts renders them multiplicitous, not because it violates double jeopardy, but because the multiple charges are contrary to the will of the legislature. *Id.*

¶ 17.  Here, Moore concedes that the charges were not identical in fact, so our analysis centers on the second prong of the multiplicity analysis:  whether the legislature intended that multiple offenses that are different in fact be brought as a single count. *See Anderson*, 219 Wis. 2d at 751. This analysis is conducted *de novo. See id.* at 751–52.

¶ 18. "[W]e begin with the presumption that the legislature intended multiple punishments. This presumption may only be rebutted by a clear indication to the contrary." *Id.* at 751 (citations omitted). "We use four factors to determine legislative intent in a multiplicity analysis: 1) statutory language; 2) legislative history and context; 3) the nature of the proscribed conduct; and 4) the appropriateness of multiple punishment." *Id.*

### 1. Statutory language

¶ 19. As noted earlier, Wis. Stat. § 940.42 provides: "Except as provided in s. 940.43, whoever knowingly and maliciously prevents or dissuades, or who attempts to so prevent or dissuade any witness from attending or giving testimony at any trial, proceeding or inquiry authorized by law, is guilty of a Class A misdemeanor." Moore argues that although one can be guilty of § 940.42 without being charged under the general attempt statute, Wis. Stat. § 939.32, the general principles underlying § 939.32 are equally applicable here. In particular, Moore points to § 939.32(3), which provides:

> Requirements. An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that the actor does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that the actor formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

Relying on this statute, Moore argues:

113

As the plain language of the statute explains, several *acts* may be undertaken in furtherance of a particular result. Yet there is but one attempt to accomplish the single goal.

Applied to this case, each of Mr. Moore's letters was an act directed to trying to persuade the witnesses in his case from attending or testifying at a single court proceeding, his trial. The several letters were part of a single attempted intimidation of each witness. Thus this first factor, the language of the statute, demonstrates that the legislature intended for there to be only one charge where a defendant undertakes several acts in attempting to dissuade one witness from testifying or appearing at a single court proceeding.

¶ 20. In response, the State argues that Moore's interpretation of the word "acts" in WIS. STAT. § 939.32(3) is too narrow. The State explains:

While it is true that sending each letter is an "act," it is equally true . . . that sending each letter constitutes several acts by itself, such as writing the letter, addressing it and stamping it, and placing it in the mail[.] The use of the plural "acts" in the general attempt statute does not clearly demonstrate that the legislature intended any specific unit of prosecution for misdemeanor intimidation of a witness.

¶ 21. We have examined both the intimidation statute at issue, WIS. STAT. § 940.42, and the general attempt statute, WIS. STAT. § 939.32. We are not convinced that the language of either of these statutes rebuts the presumption that the legislature intended multiple punishments. *See Anderson*, 219 Wis. 2d at 751.

### 2. Legislative history and context

¶ 22. Moore concedes that the legislative history of WIS. STAT. § 940.42 "is silent on whether the legisla-

ture intended individual acts of an attempt to be charged as separate offenses."[9] However, he argues that the context of § 940.42 "does support the conclusion multiple punishments were not intended for individual unsuccessful acts directed toward convincing a witness not to appear at a single court proceeding." Moore notes that the attempted crime of witness intimidation has the same punishment as the completed crime. He then explains:

> If a defendant, through several acts, successfully dissuades a witness from appearing for trial, the defendant is guilty of a single offense and may be punished once. Since an attempt is to be treated the same as a completed offense, several acts making up an unsuccessful attempt to achieve the same goal of persuading a witness not to appear, must also be treated as one offense with one punishment. To hold otherwise would result in a defendant being treated more harshly for an attempted offense than for the completed crime. This is illogical. Construing the statute to authorize a single charge regardless of the number of acts involved for the completed or attempted offense is a common sense interpretation of the statute which supports its underlying policy while being fair to both offenders and society.

¶ 23. We are not persuaded that the context of Wis. Stat. § 940.42 provides sufficient proof that it was the legislature's intent that one could be punished only once for numerous attempts to dissuade a witness from testifying. Moore's analysis ignores the absolute necessity of preserving and protecting the integrity of the judicial system. No person may legally refuse to respond to a subpoena to testify, see Wis. Stat. § 885.11, al-

---

[9] The State agrees, noting that "there is nothing in the legislative history of ch. 118, Laws of 1981, that sheds any light on the propriety of multiple punishments[.]"

though the United States and Wisconsin constitutions and evidence statutes provide limited privileges as to what a witness may be required to disclose. Attempts by anyone to intimidate any witness, or to prevent any witness from testifying, are a direct assault on the integrity of our judicial system. *See Morgan v. Bennett*, 204 F.3d 360, 367 (2d Cir. 2000) ("[I]ntimidation of witnesses raises concerns for both the well-being of the witness and her family and the integrity of the judicial process.").

¶ 24. With its passage of WIS. STAT. § 940.42, the legislature obviously recognized the importance of maintaining this systemic integrity by treating each attempt as seriously as a completed act. The legislature has determined in crafting this statute that the threat to the integrity of the judicial system is equally significant in each instance. We accept that determination.

¶ 25. Moore's conclusion—that he could have been charged with only a single count of witness intimidation if he had successfully prevented Theresa and Tamika from testifying—is a faulty analysis of the law, as we have explained. Under his theory, conviction of a completed crime would preclude charging earlier unsuccessful attempts to commit the same crime. We are aware of no authority for that sweeping proposition, and Moore provides none. Under Moore's reasoning, there would be no incentive to stop attempting to intimidate a witness once the process had begun. Whether a person sent one letter or one hundred letters attempting to intimidate the witness, there would be only one act, regardless of the number of letters and regardless of whether the witness decided to testify. Moore's interpretation would hardly serve to eliminate witness intimidation; indeed, it might well encourage it. We conclude that the context of WIS. STAT. § 940.42

supports charging a person with a separate count for each letter sent, and/or each other act performed, for the purpose of attempting to "dissuade" any witness from attending or giving testimony at a court proceeding or trial.

### 3. Nature of the proscribed conduct

¶ 26. The third factor to be considered in determining the legislature's intent is the nature of the proscribed conduct. Moore argues:

> The conduct proscribed by the intimidation statute is the interference with witnesses in court proceedings, and remains the same whether or not the attempt is successful. Because the conduct is to be treated the same, an attempt, like the completed offense, may be the subject of only one charge and punishment, regardless of the number of acts undertaken for the completed offense or its attempt.

We reject this argument for the reasons we have explained above. While the legislature could have chosen to make all acts of attempted intimidation leading up to a court date a single offense, the legislature has not done so. The legislature has forbidden any attempt to intimidate any witness. Interpreting WIS. STAT. § 940.42 as Moore requests would remove all incentive to discontinue intimidating acts once an actor had completed one such act. That result would be contrary to the language and intent of the statute and could actually encourage the attempts that the statute is designed to proscribe.

### 4. Appropriateness of multiple punishment for the conduct

¶ 27. With respect to the fourth factor, the appropriateness of multiple punishment for the conduct,

117

Moore reiterates the arguments made above. For the same reasons, we reject them.

¶ 28.   Based on our review of the four factors, we conclude that Moore has not rebutted the presumption that the legislature intended separate punishment for individual acts of attempted witness intimidation. We reject Moore's argument that the charges were multiplicitous and affirm the judgment and order.

*By the Court.*—Judgment and order affirmed.