STATE of Wisconsin, Plaintiff-Respondent,

v.

Roberto Vargas RODRIGUEZ, Defendant-Appellant.†

Court of Appeals

*No. 2005AP1265–CR. Submitted on briefs August 7, 2007.
—Decided October 2, 2007.*

2007 WI App 252

(Also reported in 743 N.W.2d 460.)

† Petition to review denied 2/21/08.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Donna L. Hintze*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Charlotte Gibson*, assistant attorney general and *J.B. Van Hollen*, attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. This case comes before us on remand from the Wisconsin Supreme Court. Roberto Vargas Rodriguez previously appealed from judgments of the circuit court for Milwaukee County convicting him of one count of battery, *see* WIS. STAT. § 940.19(1) (2005–06);[1] one count of intimidation of a victim, *see* WIS. STAT. §§ 940.45(3) & 940.46; one count of intimidation of a witness, *see* WIS. STAT. §§ 940.42 & 940.46; and two counts of disorderly conduct, *see* WIS. STAT. § 947.01, all as an habitual criminal, *see* WIS. STAT. § 939.62, and from the trial court's order denying his motion for postconviction relief. *State v. Rodriguez*, 2006 WI App 163, ¶ 1, 295 Wis. 2d 801, 722 N.W.2d 136 (*Rodriguez I*).

¶ 2. In *Rodriguez I*, Rodriguez argued that the trial court denied him his right to confrontation of the victim and witness, Jill LaMoore and her daughter Casey, who did not appear at trial and erred in:

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

(1) permitting the State to ask Rodriguez's brother about his membership in a street gang; (2) overruling a defense objection to the prosecutor accusing Rodriguez of lying during his testimony; and (3) not recusing itself in connection with Rodriguez's postconviction motion asserting that he was prejudiced by his trial lawyer's alleged deficient representation. Rodriguez also argues that he was prejudiced by his trial lawyer's alleged deficient representation when the trial lawyer: (1) did not object when the prosecutor asked the police-officer witnesses whether there was anything else they wanted to tell the jury, and (2) asked one of the police officers whether he believed that Ms. LaMoore was telling the truth when she told him that Rodriguez had attacked her and Casey.

*Id.*

¶ 3. We affirmed on all grounds. *Id.* Rodriguez petitioned for review, which petition the supreme court held in abeyance pending its decision in *State v. Jensen*, 2007 WI 26, 299 Wis. 2d 267, 727 N.W.2d 518. The court subsequently remanded *Rodriguez I* to this court for reconsideration in light of *Jensen*.

¶ 4. *Jensen* further explains previous Wisconsin holdings describing when statements are subject to the United States and Wisconsin constitutional right of confrontation[2] because they are testimonial as described in *Crawford v. Washington*, 541 U.S. 36 (2004).[3] In addition, for the first time in Wisconsin, *Jensen* adopts the doctrine of forfeiture by wrongdoing, explains when confrontation rights may be forfeited because of

---

[2] *See* U.S. CONST. amend. VI; WIS. CONST. art. I, § 7.

[3] After deciding *Crawford v. Washington*, 541 U.S. 36 (2004), in *Davis v. Washington*, 126 S. Ct. 2266 (2006), the United States Supreme Court first endorsed the doctrine of forfeiture by wrongdoing as applied to prior witness testimony.

misconduct by the person asserting the right to confrontation, and specifies how the determination of forfeiture is to be made by the trial court. *See id.*, 299 Wis. 2d 267, ¶ 57. In *Rodriguez I*, the majority concluded that all statements were admissible under *Crawford* because they were not testimonial. *Rodriguez I*, 295 Wis. 2d 801, ¶¶ 27–28. Therefore, we did not consider whether Rodriguez had forfeited his right of confrontation by misconduct, including the effect of Rodriguez's convictions for intimidation of the victim and witness. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground."). We now reconsider the right of confrontation portion of our decision in *Rodriguez I* in light of *Jensen*.

## I. Facts

¶ 5. The facts underlying the multiple convictions have been described in detail in *Rodriguez I*, and will not be repeated here except as necessary to this opinion. *See id.*, 295 Wis. 2d 801, ¶¶ 3–11. Rodriguez was charged in the original criminal complaint with battery; his victims were Jill LaMoore, who was his girlfriend, and her daughter, who was seven years old. He was also charged with intimidation of a victim based upon a supporting affidavit that alleged that he threatened LaMoore with a "bloodbath" and that he would stab her if she ever called the police again.

¶ 6. On the original trial date, January 14, 2004, after a hearing at which Rodriguez and his counsel were present, the trial court issued an order which suspended all of Rodriguez's telephone, mail and visitation privileges (except with his attorney) because the court found the restrictions were "necessary to prevent further intimidation of witnesses." The State supported its request

133

for the order with audiotapes of multiple telephone calls made by Rodriguez from the House of Correction in which Rodriguez urged his brother, Luis, to tell LaMoore not to testify. These conversations were recorded after Rodriguez had received both a written notice that this could occur and after an automated warning of the recording was given to Rodriguez before each of the recorded conversations. The audiotapes of twenty-one conversations demonstrate that Rodriguez repeatedly asked Luis to tell LaMoore "to not come to court and testify" against him. The recordings also establish that Luis indicated that he would "pay her [off]." Rodriguez eventually told Luis that he had "found" LaMoore.

¶ 7. The State subsequently filed an amended complaint, adding the additional charges of intimidation of a witness based upon Rodriguez's attempting to discourage LaMoore "from attending or giving testimony at trial." When the trial began on March 17, 2004, neither LaMoore nor her seven-year-old daughter appeared. *Id.*, ¶ 2. The State indicated it had made approximately a dozen telephone calls to LaMoore, had written letters and had attempted to subpoena her before trial. The trial court found that the "State has made a due and diligent effort to get the victim here to court . . . . [T]he State has done everything they could to try to get her here." The trial court noted, apparently in reference to the intimidation charges, that "if the charges are true . . . the defendant . . . is part of why the victim is not here." Statements LaMoore made directly to police officers, and statements that her daughter made to her and to police officers,[4] were admitted at trial through the testimony of the officers. *Id.*, ¶¶ 3–11. Rodriguez objected to that

---

[4] We do not consider whether, under *State v. Jensen*, 2007 WI 26, 299 Wis. 2d 267, 727 N.W.2d 518, there is a substantive difference between the statements of a seven-year-old child and

testimony on confrontation grounds, based upon *Crawford. Rodriguez I*, 295 Wis. 2d 801, ¶ 2.

¶ 8. The House of Correction's logs of these telephone calls and the audiotapes of the conversations were admitted as evidence at trial, and played for the jury. The jury found Rodriguez guilty of intimidating LaMoore, both as a victim and as a witness.[5]

¶ 9. In *Rodriguez I*, Rodriguez argued that the statements by LaMoore and her daughter were testimonial and therefore inadmissible because he was unable to cross-examine the declarants. Not surprisingly, the State argued that the statements were not testimonial, but that if we concluded otherwise, then Rodriguez's conviction for witness intimidation forfeited his right to object to the same witness's hearsay testimony. Rodriguez responded that the State had waived that argument because it failed to argue forfeiture by wrongdoing at the trial court, and because application of the doctrine required the trial court to find that Rodriguez caused LaMoore's absence from trial. These arguments are renewed by the parties on remand.

*II. Waiver*

¶ 10. Rodriguez argues that forfeiture by wrongdoing was not argued by the State at the trial court level, and is therefore waived. We disagree.

¶ 11. The State did not name the doctrine during the January 2004 hearing, but it advised the trial court

---

those of an adult. Such distinctions, if any, were not argued by the parties in either the original briefs or on remand.

[5] Rodriguez was also found guilty of battery and disorderly conduct, all as a habitual criminal. *State v. Rodriguez*, 2006 WI App 163, ¶ 1, 295 Wis. 2d 801, 722 N.W.2d 136 (*Rodriguez I*).

of Rodriguez's efforts to intimidate LaMoore as evidenced by the recorded telephone conversations. It also advised the trial court it would likely be charging Rodriguez with intimidation of a witness based upon those calls. The issue of Rodriguez's misconduct was before the trial court. At the time of that hearing, neither *Davis v. Washington*, 126 S. Ct. 2266 (2006), on a federal level, nor *Jensen* in Wisconsin, had yet been decided, endorsing the doctrine of forfeiture of the right of confrontation by wrongdoing. *See Davis*, 126 S. Ct. at 2280; *Jensen*, 299 Wis. 2d 267, ¶ 2. A litigant cannot fairly be held to have waived an argument that, at the time, a court of competent jurisdiction had not yet announced. *See State v. Howard*, 211 Wis. 2d 269, 287–88, 564 N.W.2d 753 (1997), *overruled on other grounds by State v. Gordon*, 2003 WI 69, 262 Wis. 2d 380, 663 N.W.2d 765.

■

¶ 12. Generally, we do not apply waiver against a respondent who is seeking to uphold a trial court ruling. *See State v. Holt*, 128 Wis. 2d 110, 124–26, 382 N.W.2d 679 (Ct. App. 1985). If, however, actions by the State prevented fact finding on an issue that could have been resolved, then waiver may be applied. *See State v. Nichelson*, 220 Wis. 2d 214, 230, 582 N.W.2d 460 (Ct. App. 1998). Here, the State did nothing to prevent necessary fact finding; on the contrary, the State initiated the process from which the trial court made the pretrial findings of witness intimidation that supported the order terminating Rodriguez's access to telephone, mail and visitors in order to prevent further intimidation.

*III. Admissibility of absent witness statements*

A. Impact of *Jensen*

¶ 13. The majority originally concluded in *Rodriguez I* that the statements were not testimonial and,

therefore, were admissible under the third *Crawford* formulation[6] because they were excited utterances. *Rodriguez I*, 295 Wis. 2d 801, ¶ 23. In reaching that conclusion, we considered the following: *Davis*; *State v. Manuel*, 2005 WI 75, 281 Wis. 2d 554, 697 N.W.2d 811; *State v. Searcy*, 2006 WI App 8, 288 Wis. 2d 804, 709 N.W.2d 497; *State v. Hemphill*,[7] 2005 WI App 248, 287 Wis. 2d 600, 707 N.W.2d 313; and *State v. King*, 2005 WI App 224, 287 Wis. 2d 756, 706 N.W.2d 181. *Rodriguez I*, 295 Wis. 2d 801, ¶¶ 12–26. We did not reach the question of whether Rodriguez forfeited his right of confrontation or whether the State waived that argument. *See Blalock*, 150 Wis. 2d at 703.

¶ 14. *Jensen* explains that the trial court is to determine before trial whether the defendant caused the unavailability of the witness. *Id.*, 299 Wis. 2d 267, ¶ 51. The supreme court describes the process the trial

[6] The three formulations of testimonial statements under *Crawford*, adopted in *State v. Manuel*, 2005 WI 75, 281 Wis. 2d 554, 697 N.W.2d 811, are:

(1) *"[E]x parte in-court testimony or its functional equivalent— that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially."*

(2) *"[E]xtrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions."*

(3) *"[S]tatements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."*

*Id.*, ¶ 37 (citations to *Crawford* omitted; alterations in *Manuel*); *see Rodriguez I*, 295 Wis. 2d 801, ¶ 20.

[7] Our supreme court, in *Jensen*, overruled *State v. Hemphill*, 2005 WI App 248, 287 Wis. 2d 600, 707 N.W.2d 313. *Jensen*, 299 Wis. 2d 267, ¶ 24 n.8.

court is to employ and the burden of proof to be assigned: "[W]e adopt a broad forfeiture by wrongdoing doctrine, and conclude that if the State can prove by a preponderance of the evidence that the accused caused the absence of the witness, the forfeiture by wrongdoing doctrine will apply to the confrontation rights of the defendant." *Id.*, ¶ 57.

¶ 15. Under the doctrine of forfeiture by wrongdoing announced in *Jensen*, the statement of an absent witness is admissible against a defendant who the trial court determines by a preponderance of the evidence caused the witness's absence. *Id.* Applying the long-established legal definition of causation, the court must find that "the defendant's conduct was a substantial factor in producing" the absence of the witness, keeping in mind that "there may be more than one cause" of the witness's absence, and "the acts of two [or] more persons might jointly produce" the absence. *See* Wis JI—Criminal 901.[8] Thus, a trial court need only determine that the defendant's actions were *a* cause of the witness's absence; defendant's conduct need not be the only cause. *See State v. Block*, 170 Wis. 2d 676, 683, 489 N.W.2d 715 (Ct. App. 1992) (intervening negligence of health care providers does not negate stabbing as a cause of death). Under the provisions of Wis. Stat.

---

[8] Wisconsin JI—Criminal 901, entitled "CAUSE," states, in pertinent part: " 'Cause' means that the defendant's conduct was a substantial factor in producing (identify harm or consequence).

. . . .

[There may be more than one cause of [the harm or consequence]. The act of one person alone might produce it, or the acts of two more persons might jointly produce it.]"

§§ 940.42[9] and 940.46,[10] an attempt to intimidate a witness may be prosecuted as a completed act, and solicitation of an intermediary to perform the act of intimidation does not exonerate the person making the solicitation. *See State v. Moore*, 2006 WI App 61, ¶¶ 13, 24, 292 Wis. 2d 101, 713 N.W.2d 131.

¶ 16. If the statements of the absent witness were *not* testimonial, and were otherwise admissible (here, as an exception to the hearsay rule), the statements can be used at trial regardless of the conduct of the defendant in causing the absence of the witness. *See Jensen*, 299 Wis. 2d 267, ¶¶ 14–15 (citations omitted). We assume, without deciding, that the statements were testimonial. Consequently, we first determine whether forfeiture by wrongdoing has been established in this case by a preponderance of the evidence as required by *Jensen. Id.*, 299 Wis. 2d 267, ¶ 57.

B. Forfeiture by wrongdoing

■

¶ 17. It is undisputed that LaMoore and her daughter did not appear at trial, either when trial was

---

[9] Wisconsin Stat. § 940.42 states, in pertinent part: **"Intimidation of witnesses; misdemeanor.** Except as provided in s. 940.43, whoever knowingly and maliciously prevents or dissuades, or who attempts to so prevent or dissuade any witness from attending or giving testimony at any trial, proceeding or inquiry authorized by law, is guilty of a Class A misdemeanor."

[10] Wisconsin Stat. § 940.46 states, in pertinent part:

**Attempt prosecuted as completed act.** Whoever attempts the commission of any act prohibited under ss. 940.42 to 940.45 is guilty of the offense attempted without regard to the success or failure of the attempt. The fact that no person was injured physically or in fact intimidated is not a defense against any prosecution under ss. 940.42 to 940.45.

originally scheduled or when it actually commenced. This record contains abundant facts[11] from which the trial court could be, and apparently was, satisfied "by the greater weight of the credible evidence"[12] that Rodriguez either independently (*e.g.,* his recorded statement while incarcerated that he "found" LaMoore), or Luis at Rodriguez's request (*e.g.,* Luis's recorded statement that he would "pay her off") were a cause of LaMoore's failure to appear. The trial court's order, entered before the final trial date, terminated

[11] *Davidson v. Davidson,* 169 Wis. 2d 546, 558, 485 N.W.2d 450 (Ct. App. 1992) (In the absence of specific findings, this court may search the record to determine whether the evidence supports the trial court's decision.); *see Dodge v. Carauna,* 127 Wis. 2d 62, 67, 377 N.W.2d 208 (Ct. App. 1985) (appellate court may search record for evidence sustaining trial court's decision).

[12] WISCONSIN JI—CIVIL 200, entitled "BURDEN OF PROOF: ORDINARY," states:

> The greater weight of the credible evidence means that the evidence in favor of a "yes" answer has more convincing power than the evidence opposed to it. Credible evidence means evidence you believe in light of reason and common sense.

> "Reasonable certainty" means that you are persuaded based upon a rational consideration of the evidence. Absolute certainty is not required, but a guess is not enough to meet the burden of proof.

> **COMMENT**

> . . . .

> **Case Law.** Wisconsin law recognizes and requires differing degrees of persuasion for different types of cases. Thus, separate and distinct burdens exist for: (1) criminal cases (beyond a reasonable doubt); (2) civil cases with penal aspects or involving criminal type behavior (higher civil standard: to a reasonable certainty by evidence that is clear, satisfactory, and convincing); and (3) ordinary civil actions (ordinary civil standard to a reasonable certainty by the greater weight of the credible evidence).

Rodriguez's telephone, mail and visitation privileges based upon a finding that the action was "necessary to prevent the further intimidation of witnesses." This is, in essence, a finding by the trial court by a preponderance of the credible evidence that Rodriguez had taken steps while being held at the House of Correction to intimidate LaMoore, who he knew to be a witness against him, that intimidation has already occurred (*e.g.*, LaMoore did not appear at the trial date), and that the restrictions announced were necessary to attempt to prevent future intimidation. The finding of misconduct, coupled with LaMoore's failure to appear at the original or adjourned trial date, and the court's finding that the "State has made a due and diligent effort to get the victim here to court," satisfy the substantive requirements announced in *Jensen. Id.*, ¶¶ 53–57.

¶ 18. Rodriguez argues that there is no proof of intimidation of a witness because Luis denies having passed on the message to LaMoore and because the State did not prove that Luis actually delivered the message. Such proof would compel the State either to find the missing witness and persuade her to testify about whether she was intimidated (which would remove *Crawford* confrontation issues because she would no longer be unavailable) or to persuade Luis to incriminate himself by admitting that he took action to intimidate the witness. We do not believe that *Jensen* imposes such impossible alternatives on the State, and that the impossibility of such alternatives may have also been a reason that *Jensen* requires proof only by a preponderance of credible evidence, *i.e.,* that defendant's misconduct was a cause of the witness's absence is more likely than not. *See, e.g., United States v. Saulter*, 60 F.3d 270, 280 (7th Cir. 1995) (to prove by

141

a preponderance of the evidence means that it is "more likely than not" that the examined action occurred).

¶ 19. What the jury found beyond a reasonable doubt, the trial court, as we have explained, earlier found by a preponderance of the evidence. The jury found that Rodriguez intimidated LaMoore as a victim and intimidated LaMoore as a witness. Those jury findings confirm the sufficiency of the evidence to support the trial court's earlier conclusion by a preponderance of the evidence that Rodriguez had intimidated LaMoore. We hold that where the jury finds beyond a reasonable doubt that the defendant intimidated the person who was a witness, the defendant has forfeited, by his own misconduct, his right to confront that witness.

¶ 20. Because we conclude that Rodriguez forfeited, by his wrongful conduct, his right to confront LaMoore and her daughter, we do not decide whether the statements by LaMoore or her daughter were testimonial. *See Blalock*, 150 Wis. 2d at 703. Except as modified herein, we reaffirm our opinion in *Rodriguez I.*

*By the Court.*—Judgments and order affirmed.

¶ 21. FINE, J. (*concurring*). Although I agree with the Majority's decision to affirm, I would not reach the forfeiture issue because, as explained in *State v. Rodriguez*, 2006 WI App 163, 295 Wis. 2d 801, 722 N.W.2d 136, none of the statements were "testimonial" as that word of art is used in *Crawford v. Washington*, 541 U.S. 36 (2004). Rodriguez, 2006 WI App 163, ¶¶ 2–27, 295 Wis. 2d at 808–825, 722 N.W.2d at 140–148. *State v. Jensen*, 2007 WI 26, 299 Wis. 2d 267, 727 N.W.2d 518, did not alter this analysis.

Jensen explained:

> "The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime."

Thus, we believe a broad definition of testimonial is required to guarantee that the right to confrontation is preserved. That is, we do not agree with the State's position that the government needs to be involved in the creation of the statement. We believe such a narrow definition of testimonial could create situations where a declarant could nefariously incriminate a defendant.

*Jensen*, 2007 WI 26, ¶ 24, 299 Wis. 2d at 284, 727 N.W.2d at 526–527 (footnote overruling *State v. Hemphill*, 2005 WI App 248, 287 Wis. 2d 600, 707 N.W.2d 313, omitted) (quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004)) (internal citation omitted). This is fully consistent with what we wrote in *Rodriguez*:

> A similar analysis applies when police talk to an attack-victim when the stress and cognitive disruption caused by the attack is still dominant, because the key consideration in connection with both the third *Crawford/Manuel* formulation and *Davis*'s rubric, focuses on an objective analysis of the out-of-court declarant's expectation as to how what he or she tells law enforcement will be used. *See Davis* [*v.* Washington], 126 S. Ct. [2266,] 2272–2273 [(2006)]; [*State v.*] *Manuel*, 2005 WI 75, ¶ 37, 281 Wis. 2d [554,] 576, 697 N.W.2d [811,] 821 (third formulation concerns " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial' ") (citation to *Crawford* omitted). Thus, the out-

143

of-court declaration must be evaluated to determine whether it is, on one hand, overtly or covertly intended by the speaker to implicate an accused at a later judicial proceeding, or, on the other hand, is a burst of stress-generated words whose main function is to get help and succor, or to secure safety, and are thus devoid of the "possibility of fabrication, coaching, or confabulation." *See* [Idaho v.] *Wright*, 497 U.S. [805,] 820 [(1990)]. We examine against this background what Ms. LaMoore and her daughter Casey told the officers, both at the initial response to the neighbor's 911–call, and the following day.

There is nothing in the Record here that indicates that what Rodriguez does not dispute were "excited utterances" by Ms. LaMoore and Casey when the officers first spoke with them were motivated by anything other than their desire to get help and secure safety. Moreover, given their contemporaneously endured trauma it cannot be said that objectively they said what they said to the officers with a conscious expectation that their words would somehow have the potential for use in court against Rodriguez. It also cannot be said that, objectively, the officers intended to record past activities rather than assess the then-current situation. Moreover, there is nothing in the Record that indicates that anything either Ms. LaMoore or her daughter told the officers during that first encounter was in response to any sort of structured interrogation to questioning beyond simple inquiries. Simply put, Officers Sterling and Kurtz did not go to the LaMoore house looking for evidence with which to prosecute Rodriguez, and, after they arrived, their focus was not on building a case against him but, rather, trying to ensure the safety of Ms. LaMoore and her daughter, and other members of the community. Thus, those out-of-court declarations were not testimonial. Similarly, when Officer Kurtz went to the LaMoore house the next morning to return the dog and other property, his inquiries were limited to an assessment of whether Ms. LaMoore and Casey were

144

still in danger, and Casey's tug on the officer's trouser leg and spontaneous exclamation begging her mother not to lie and revealing that Rodriguez was still there and still a severe threat to their safety was also, under our *de novo* analysis, not "testimonial." Once prodded by her daughter, Ms. LaMoore broke down and admitted the truth in an otherwise unprompted collapse of her fragile pretense that all was well. Those statements, also, were not "testimonial."

*Rodriguez*, 2006 WI App 163, ¶¶ 26–27, 295 Wis. 2d at 823–825, 722 N.W.2d at 147–148.

¶ 22. As we have seen, a focus of the inquiry of whether an out-of-court declaration is "testimonial" is " 'whether the declarant intends to bear testimony against the accused.' " *Jensen*, 2007 WI 26, ¶ 24, 299 Wis. 2d at 284, 727 N.W.2d at 527 (quoting *Cromer*, 389 F.3d at 675). " 'That intent, in turn, *may* be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.' " *Ibid.* (emphasis added). I emphasize the word "may" because almost any person who watches even an occasional law/crime drama on television, or sees a law/crime film would, if he or she thought about it even for a moment, per force, "anticipate" that a statement made to law enforcement would be used in court. Thus, as we explained in *Rodriguez*, and as we noted above in our long quotation from that decision,

> the out-of-court declaration must be evaluated to determine whether it is, on one hand, overtly or covertly intended by the speaker to implicate an accused at a later judicial proceeding, or, on the other hand, is a burst of stress-generated words whose main function is to get help and succor, or to secure safety, and is thus devoid of the "possibility of fabrication, coaching, or confabulation."

*Id.*, 2006 WI App 163, ¶ 26, 295 Wis. 2d at 823–824, 722 N.W.2d at 147 (quoted source omitted).

¶ 23. Based on the foregoing, I would affirm but not on the ground chosen by the Majority. Accordingly, I respectfully concur.