COURT OF APPEALS
DECISION
DATED AND FILED

December 6, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2021AP371-CR**
**2021AP372-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2019CF1141
2019CF1743

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JASON LUIS RODRIGUEZ,

DEFENDANT-APPELLANT.

APPEALS from judgments of the circuit court for Milwaukee County: GLENN H. YAMAHIRO, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and White, J.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1 PER CURIAM. In this consolidated appeal, Jason Luis Rodriguez appeals from judgments convicting him of strangulation and suffocation, false imprisonment, two counts of felony bail jumping, and three counts of intimidation of a witness. Rodriguez contends that the circuit court erroneously admitted statements from the victim, J.E.P., under the forfeiture by wrongdoing doctrine. We reject Rodriguez's argument, and affirm.

## BACKGROUND

### A. Charges and Pretrial Proceedings

¶2 In Milwaukee County Circuit Court case No. 2019CF1141, the State charged Rodriguez with strangulation and suffocation, false imprisonment, and two counts of felony bail jumping. According to the complaint, J.E.P. alleged that on March 12, 2019, Rodriguez, her boyfriend, choked her and dragged her multiple times by her hair. Rodriguez took J.E.P.'s phone so that she could not make any calls or send any text messages. After J.E.P. got her phone back, she texted her mother, E.M.B., for help. Rodriguez then took J.E.P.'s phone again and forced her to respond to E.M.B. that "everything [was] okay." After the text message was sent to E.M.B., Rodriguez broke J.E.P.'s phone. J.E.P. tried to get away, but Rodriguez repeatedly grabbed her by the neck and choked her. Eventually, J.E.P. was able to escape.

¶3 On March 28, 2019, at the preliminary hearing, the State informed the court that Rodriguez had made more than forty calls from the jail to J.E.P., and that Rodriguez's mother also contacted J.E.P. At the request of the State, the court commissioner suspended Rodriguez's phone privileges in the jail.

¶4     At a bail modification hearing on April 3, 2019, the State indicated that Rodriguez was "still calling [J.E.P.] and having family members call her," despite having his phone privileges rescinded. The State indicated that intimidation charges were forthcoming.

¶5     Subsequently, in Milwaukee County Circuit Court case No. 2019CF1743, the State charged Rodriguez with three counts of felony intimidation of a witness and one count of felony intimidation of a victim. According to the complaint, Rodriguez attempted to dissuade J.E.P. from causing the prior case from being prosecuted on four separate occasions between March 17, 2019, and March 24, 2019. The complaint detailed numerous text messages from Rodriguez to J.E.P., which included asking her to drop the charges, offering to pay her to drop the charges, and telling her to go to the court and drop the charges. The complaint also detailed several calls from Rodriguez, including a call where he told her that "When I come home I'm coming for you."

¶6     Following the new charges, in an August 2019 *pro se* letter to the court, Rodriguez wrote, "I learned the court system does not like when someone trys [sic] to pursuae [sic] a witness from coming to court …. I did learn for future refrences [sic] (DO NOT) (INTIMIDATE YOUR WITNESS), lesson learned never doing that again."

¶7     On November 1, 2019, the two cases were joined for trial. On November 18, 2019, the date scheduled for the trial, J.E.P. and her mother appeared. The court adjourned the trial due to a discovery issue regarding the jail calls.

¶8     At the rescheduled trial date on December 16, 2019, the State indicated that J.E.P. had not appeared and that it had filed a motion to admit her

statements under the forfeiture by wrongdoing doctrine. The prosecutor informed the court that J.E.P. had stopped responding to the victim/witness advocate since the last court date. The prosecutor also stated that at the last date J.E.P. was "terrified and sobbing the entire time," and stated that she did not want to testify because she was afraid for her safety and the safety of her daughter and her mother. According to the prosecutor, Rodriguez sent J.E.P. hundreds of text messages and called J.E.P. six times telling her not to come to court and to get the case dropped.

### B. Forfeiture by Wrongdoing Decision

¶9     An evidentiary hearing was held on the State's forfeiture by wrongdoing motion. Investigator Douglas Tweedie testified that he spoke with J.E.P. on March 20, 2019. Investigator Tweedie described J.E.P. as "shaking a little bit" and "visibly shook[.]" J.E.P. said that Rodriguez had sent her numerous text messages that were threatening and caused her to fear for her safety. Investigator Tweedie testified about the content of several of the messages, which included Rodriguez apologizing and asking J.E.P. to drop the charges, and offering to pay her to drop the case.

¶10    Investigator Tweedie further testified that on November 16, 2019, he escorted J.E.P. to a conference room for trial preparation with the prosecutor. Investigator Tweedie testified that "[y]ou could see anxiety building in her," and after discussing the case, she seemed "agitated, nervous, and scared." J.E.P. made comments that she was afraid something could happen to her.

¶11    Investigator Tweedie next observed J.E.P. on November 18, 2019. Investigator Tweedie testified that when J.E.P. was told that the trial was going to be adjourned, J.E.P. was "shaking" and "crying." J.E.P. said that she had to look

out for her child and she was not coming back because she was afraid of Rodriguez. As Investigator Tweedie walked J.E.P. to her car, J.E.P. said that "it doesn't matter, you don't get it, he can do anything, his family has connections, it doesn't matter where he is, if he wanted something done it would happen to me, he made comments to me like that in the past[.]"

¶12 In addition, Investigator Tweedie testified that texts that Rodriguez had previously sent were resent to J.E.P. in November 2019. J.E.P. called Investigator Tweedie and was "hysterical" and panicking that someone had Rodriguez's phone or he was out. Investigator Tweedie looked into it and determined that the texts were resent due to an "internet fluke" that made national news.

¶13 After hearing argument, the circuit court found that Rodriguez forfeited his right to confrontation subject to a showing on the next trial date that the State had exercised due diligence in attempting to secure J.E.P.'s presence. The court noted that the "barrage of text messages" Rodriguez sent over a one week period in March 2019 was "almost unprecedented" and it was "basically nonstop." The court stated that this was "classic abuser behavior and attempting to manipulate a victim" and the only reason the contact stopped was that the jail successfully prevented Rodriguez from having phone access. The court noted that J.E.P. had appeared for the November trial date, but the testimony was uncontroverted that J.E.P. was "petrified" of Rodriguez and that she was not planning to return to court.

¶14 On January 27, 2020, the date scheduled for trial, the prosecutor informed the court that a victim/witness advocate and Investigator Tweedie had attempted to reach J.E.P. that morning and there was not a response. The

prosecutor also informed the court that Investigator Tweedie had received a phone call from J.E.P. the preceding Friday and she told him that someone contacted her and told her to download an app because Rodriguez needed to speak with her. J.E.P. sent a screenshot of the text to Investigator Tweedie. Investigator Tweedie informed J.E.P. that her presence was required in court per the subpoena she received.

¶15    The State presented testimony from Marivel Maldonado, who worked for the district attorney's office. Maldonado testified that she served a subpoena on J.E.P. for January 27, 2020. Maldonado explained to J.E.P. the court date and time and told J.E.P. to contact the victim/witness advocate if she had any questions.

¶16    The circuit court found that J.E.P. was unavailable. The court stated that Rodriguez's "actions were more than adequate to harass and intimidate [J.E.P.]," which was bolstered by Investigator Tweedie's testimony describing J.E.P. on the date she had appeared for trial. The case then proceeded to trial.

**C. Jury Trial**

¶17    During the jury trial, the State presented testimony from several witnesses: Officer Dustin Corrigan, who spoke to both J.E.P. and E.M.B. after the alleged offenses on March 13, 2019; Officer Thomas Kupsik, who spoke to J.E.P. after Rodriguez showed up to her workplace on March 19, 2019; and Investigator Tweedie.

¶18    The State showed the jury photos of J.E.P. from March 13, 2019, which depicted bruising and injuries to her neck. The State also played a portion of a video of J.E.P.'s interview with the police after Rodriguez showed up at her

work place, and portions of the calls that Rodriguez made to J.E.P. from jail. In addition, the State moved into evidence forty-six pages of text messages between Rodriguez and J.E.P.

¶19 The jury found Rodriguez guilty of strangulation and suffocation, false imprisonment, two counts of felony bail jumping, and three counts of intimidation of a witness. The jury acquitted Rodriguez of one count of felony intimidation of a victim. This appeal follows. Additional relevant facts will be referenced below.

## DISCUSSION

¶20 On appeal, Rodriguez contends that the circuit court erroneously admitted J.E.P.'s out-of-court statements under the doctrine of forfeiture by wrongdoing.

¶21 The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI; *see also*, WIS. CONST. art. I, § 7. "Testimonial statements of witnesses absent from trial [can be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

¶22 One exception to the Confrontation Clause is the forfeiture by wrongdoing doctrine. *State v. Baldwin*, 2010 WI App 162, ¶34, 330 Wis. 2d 500, 794 N.W.2d 769. The forfeiture by wrongdoing doctrine permits the introduction of statements of a declarant who is detained or kept away by the defendant. *Id.*

The policy behind this doctrine is to prohibit a defendant from profiting from his or her own wrongdoing. *See id.*, ¶35.

¶23 In order to admit evidence under the forfeiture by wrongdoing doctrine, the parties agree that the State must prove by a preponderance of evidence that: (1) the witness whose out-of-court statement the State seeks to use is unavailable; and (2) the defendant prevented the witness from testifying and did so with the intent to prevent the witness from testifying. *See id.*, ¶¶37-39, 48.

¶24 Whether the admission of evidence violates a defendant's right to confrontation is a question of law that we review *de novo*. **State v. Reinwand**, 2019 WI 25, ¶17, 385 Wis. 2d 700, 924 N.W.2d 184. We accept the circuit court's findings of fact unless they are clearly erroneous. *Id.*, ¶18.

¶25 In this case, we conclude that the circuit court properly admitted J.E.P.'s out-of-court statements under the forfeiture by wrongdoing doctrine. First, we address whether J.E.P. was unavailable. WISCONSIN STAT. § 908.04(1)(e) (2019-20)[1] requires the State to secure a witness's appearance "by process or other reasonable means." The State also must make a "'good-faith effort' and exercise 'due diligence'" to secure the witness's presence. **Baldwin**, 330 Wis. 2d 500, ¶48 (citation omitted).

¶26 Rodriguez suggests that the State should have taken "more aggressive actions" to compel J.E.P.'s appearance, such as a body attachment. Rodriguez, however, does not cite any case law that establishes that a body

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

attachment is a prerequisite to establishing a witness's unavailability. *See id.*, ¶47 (holding that the defendant had failed "to cite any authority in support of his argument that a finding of unavailability requires the State to prove the extent of its attempts to serve a body attachment").

¶27 Moreover, the record reflects that the State made a "good-faith effort" and exercised "due diligence" to secure J.E.P.'s presence. *See id.*, ¶48 (citation omitted). In this case, it is undisputed that a subpoena was served in advance on J.E.P. for the January 27, 2020 trial date. Maldonado, the process server, testified that she served the subpoena on J.E.P. on December 31, 2019, and explained the court date and time to J.E.P.

¶28 In addition, the record reflects that the State made ongoing efforts to secure J.E.P.'s presence. The prosecutor informed the court that on the Friday before the January trial date, Investigator Tweedie informed J.E.P. that her presence was required in court per the subpoena she received. The prosecutor also indicated that both Investigator Tweedie and a victim/witness advocate attempted to reach J.E.P. the morning of the trial, but J.E.P. did not respond.

¶29 Given that J.E.P. was served with a subpoena, and the State's on-going efforts regarding J.E.P.'s appearance up until the morning of the trial, we conclude that the record reflects that the State made a "good-faith effort" and exercised "due diligence" to secure J.E.P.'s presence. *See id.* (citation omitted).

¶30 Second, we address whether the defendant prevented the witness from testifying and did so with the intent to prevent the witness from testifying. *See id.*, ¶39. To prevail on this factor, the State must show that the defendant's actions were a "substantial factor" in producing the witness's absence from trial.

9

*State v. Rodriguez*, 2007 WI App 252, ¶15, 306 Wis. 2d 129, 743 N.W.2d 460 (citation omitted).

¶31    Here, the record reflects that Rodriguez prevented J.E.P. from testifying and did so with the intent to prevent J.E.P. from testifying. *See* *Baldwin*, 330 Wis. 2d 500, ¶39. Rodriguez sent hundreds of text messages to J.E.P. which included requests asking her to drop the charges. Rodriguez also made multiple phone calls to J.E.P. from the jail, including telling J.E.P. that he would come for her when he came home, which Investigator Tweedie interpreted as an overt threat. Moreover, Investigator Tweedie's description of J.E.P.'s emotional reaction and her statements at the November trial date that she was not coming back to court based on safety concerns reflects that Rodriguez succeeded in preventing J.E.P. from testifying.[2]

¶32    Rodriguez admits that he contacted J.E.P. numerous times, but emphasizes that he did not have any contact with J.E.P. after March or April 2019 due to the fact that his phone privileges were rescinded. This overlooks, however, that on the Friday preceding the January 27, 2020 trial date, J.E.P. reported to Investigator Tweedie that someone had called her and asked her to download an app because Rodriguez needed to speak to her.

---

[2] We note that Rodriguez in his initial brief complains that the circuit court accepted Investigator Tweedie's testimony and ignored testimony from Maldonado that J.E.P. was not crying, J.E.P. did not look nervous, and "said she was fine" when she was served with a subpoena. Given that Maldonado only interacted with J.E.P. on a single occasion, and Investigator Tweedie had repeated contact with J.E.P., the circuit court could reasonably give more weight to Investigator Tweedie's testimony about J.E.P. *See State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345 ("When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony.").

¶33    In addition, Rodriguez attempts to distinguish his case from ***Baldwin*** because J.E.P. showed up for the November 18, 2019 trial date.  As the State observes, ***Baldwin*** did not hold that an intervening event broke any connection between a defendant's past conduct toward the witness and the witness's non-appearance at a future trial date.  Rather, ***Baldwin*** held that past physical violence and threats to a victim are "highly relevant" to a finding of forfeiture by wrongdoing.  *See **id.***, ¶44 (citation omitted).  And, in this case, Rodriguez's violent conduct towards J.E.P., his attempt to prevent her from seeking help by breaking her phone, and his numerous text messages and calls are highly relevant to a finding of forfeiture by wrongdoing.

¶34    Therefore, for all of the reasons above, we reject Rodriguez's claim that the circuit court erred when it admitted J.E.P.'s statements under the forfeiture by wrongdoing doctrine.[3]

*By the Court.*—Judgments affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] We note that the State also raises harmless error.  Because we conclude that the circuit court did not err, we do not address harmless error.  *See **State v. Blalock***, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

11