**2023 WI APP 9**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2022AP323-FT

Complete Title of Case:

IN THE MATTER OF THE NAME CHANGE OF **R. I. B.**:

**R. I. B.**,

PETITIONER-APPELLANT,

V.

BROWN COUNTY CIRCUIT COURT,

RESPONDENT-RESPONDENT.

| | |
|---|---|
| Opinion Filed: | January 18, 2023 |
| Submitted on Briefs: | August 2, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Robert Theine Pledl* of *Davis & Pledl, SC*, Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the respondent-respondent, the cause was submitted on the brief of *Joshua L. Kaul*, attorney general, and *Beauregard W. Patterson*, assistant attorney general. |

<table>
<tr>
<td>

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 18, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

</td>
<td>

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

</td>
</tr>
</table>

| | |
|---|---|
| **Appeal No.**    **2022AP323-FT** | Cir. Ct. No. 2021CV1262 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

IN THE MATTER OF THE NAME CHANGE OF R. I. B.:

R. I. B.,

     PETITIONER-APPELLANT,

   V.

BROWN COUNTY CIRCUIT COURT,

     RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Brown County: TAMMY JO HOCK, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 GILL, J. This appeal addresses whether a transgender individual met the statutory requirements for a confidential name change under WIS. STAT.

§ 786.37(4) (2019-20).[1] In answering that question, we must determine the meaning of § 786.37(4)'s evidentiary standard for obtaining a confidential name change— specifically, the petitioner must demonstrate "by a preponderance of the evidence[] that publication of his or her petition *could endanger* him or her." (Emphasis added.)

¶2 Robert[2] appeals a circuit court order denying his petition for a confidential name change pursuant to WIS. STAT. § 786.37(4). Robert argues that § 786.37(4)'s standard required him to demonstrate only that it is possible that physical, mental, or emotional harm could occur to him if his name change petition is published, and that the court erred when it concluded that Robert failed to demonstrate by a preponderance of the evidence that publication of his name change petition "could endanger" him. Conversely, the State contends that § 786.37(4) required Robert to demonstrate that it is more likely than not that physical harm could occur to him if his name change petition is published.

¶3 We conclude that WIS. STAT. § 786.37(4)'s standard requires proof that a petitioner more likely than not could be physically endangered if the name change petition is published. "Could," as used in this context, simply denotes the possibility of a future event. We further conclude that the circuit court did not

---

[1] This is an expedited appeal under WIS. STAT. RULE 809.17 (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

WISCONSIN STAT. §§ 786.36 and 786.37 were amended by 2021 Wis. Act 182 to include provisions relating to name changes of minors under fourteen years of age. *See* §§ 786.36(1m)(c); 786.37(2). These amendments do not affect this case.

[2] For ease of reading, we use a pseudonym in this confidential matter when referring to the appellant, R.I.B.

Furthermore, we refer to Robert using a "male" name and he/him pronouns "out of respect for [Robert's] individual dignity." *See State v. C.G.*, 2022 WI 60, ¶6, 403 Wis. 2d 229, 976 N.W.2d 318 (plurality opinion as to ¶¶6 and 36-46).

erroneously exercise its discretion by denying Robert's petition for a confidential name change, which it did in a manner consistent with applying the foregoing standard. We therefore affirm the court's order.

## BACKGROUND

¶4    Born a biological female, Robert has since identified as a transgender male. At the age of sixteen, Robert filed a pro se petition in the circuit court for a confidential name change. Robert requested that his first name be legally changed from the "female" name, given to him at birth, to the "male" name that Robert now uses publicly. The court denied Robert's pro se petition for a confidential name change. Robert appealed that decision to this court, but we dismissed the appeal due to Robert's failure to submit a brief.

¶5    Roughly one year after the circuit court dismissed Robert's first petition, Robert retained counsel and filed a second petition for a confidential name change.[3]    Attached to the second petition was an addendum, from which the following facts concerning Robert's background are taken.

¶6    Robert began questioning his gender identity at a young age, and he "became more aware of [his] true gender identity" when he was roughly twelve years old. While enrolled in elementary school, Robert began "transition[ing] socially" by wearing men's clothing and going by the name "Robert." During that same time, Robert began experiencing bullying. Students "verbally abused" Robert for wearing men's clothes and for using a "male" name, and they reportedly called Robert "a fat ugly lesbian." According to Robert, these same students also "kicked

---

[3] The Honorable Tammy Jo Hock presided over both of Robert's petitions for a confidential name change.

and punched" him. Similarly, a teacher at Robert's elementary school verbally abused him by repeatedly stating that Robert "had bad parents" because they allowed him to wear male clothing and go by a male name. The teacher also referred to Robert as "an ugly little girl" and told Robert that he "would have no friends." Robert further stated that when he cried at school because of the teacher's conduct, the teacher threatened to audiovisually record Robert so that others could see that he was "acting like a girl and not like a boy." On one occasion, Robert was so afraid of the teacher that he hid in a bathroom until the school's "crisis team" arrived.

¶7 Unfortunately, Robert faced more bullying once he enrolled in middle school, again for wearing men's clothing and using a "male" name. According to Robert, students called him a "lesbian," a "faggot," and an "ugly bitch." Students also threatened to "punch and stab" Robert, and at one point he was pushed to the ground "and a group of students beat [him] up." On another occasion, Robert found a note in his locker "telling [him] to kill" himself. Robert "became so anxious" that he was hospitalized in a psychiatric unit.

¶8 Robert determined that he could not stay at that middle school, and halfway through his eighth grade year, he transferred to a different school. After transferring, "[t]hings were somewhat better" at Robert's new school, although he was still bullied by one student, and one teacher refused to use Robert's "he/him pronouns."

¶9 Outside of school, Robert's bullying continued. Students in Robert's neighborhood called him "slurs, beat [him] up, and threatened to shoot [him] with a BB gun." According to Robert, some members of his family "criticized" him and his mother, and they "cut off contact" with them because of Robert's gender identity.

¶10 In 2019, when Robert was fourteen or fifteen years old, he "began hormone therapy … and it significantly changed [his] appearance." Robert also "recently had sex change surgery to remove breast tissue and masculinize [his] chest." Robert's "physical appearance is now that of a 17 year old boy."

¶11 Robert's petition also cited national news stories "about transgender people being assaulted, physically harmed[,] and killed because of their gender identity." Based on Robert's previous experiences with being bullied, he is "worr[ied]" that the physical violence cited in those stories could happen to him. Based on the above facts, Robert's petition stated that if Robert's name change petition is published, he believes that "students at [his] school and other people will bully [him] and physically attack [him]."

¶12 Robert submitted four attachments in support of his petition for a confidential name change. One attachment was a letter from the doctor who performed Robert's sex change surgery, verifying that the surgery occurred. Another attachment was a letter from Robert's therapist, "describing [the] bullying and harassment that [Robert] has reported to her." The third attachment was a government report from the United States Department of Health and Human Services/Centers for Disease Control and Prevention, titled "Transgender Identity and Experiences of Violence Victimization, Substance Use, Suicide Risk, and Sexual Risk Behaviors Among High School Students—19 States and Large Urban School Districts." The last attachment was a letter from Robert's mother, confirming that Robert has never been charged with a crime or adjudicated delinquent, nor does he have any personal debt. Robert's counsel also filed a brief in support of Robert's confidential name change petition, which cited additional materials discussing violence against transgender individuals.

5

¶13    The circuit court did not hold a hearing on Robert's petition for a confidential name change and denied the petition in a written order. The court held that "[t]he test is not whether a person is uncomfortable with public disclosure of a name change but rather if the publication required under Wisconsin Statutes would endanger the individual." The court found that Robert

> describes [in his petition] being fearful that if this petition for a name change is published in the newspaper, [he] will be bullied or physically attacked. Yet, [Robert] is already using the name ["Robert"] with family members, at school and in personal dealings. Furthermore, … 17 year old [Robert] describes having undergone "sex change surgery to remove breast tissue and masculinize [his] chest" and "[his] physical appearance is now that of a 17 year old boy." Therefore, anyone who has contact with [Robert] already knows that [he] is in gender transition and uses a male name.

The court therefore determined that Wisconsin's standard, nonconfidential name change procedure "does not provide a danger to [Robert] or subject [Robert] to harassment and/or intimidation." Stated differently, the court concluded that Robert had failed to show "[a] rational basis to believe [that Robert] is endangered due to publication to notify possible creditors."

¶14    Robert now appeals, asking this court to reverse the circuit court's order denying his confidential name change petition and to remand this matter for the court to consider the merits of the actual name change petition.

## DISCUSSION

### I. Standard of review

¶15    The parties first disagree over the proper standard of review to apply to a circuit court's order denying a confidential name change petition. Robert contends that because the court never held a hearing on his name change petition, a

de novo standard of review should apply to our review because there are no factual issues on appeal.[4] We agree with the State, however, that our review of a circuit court's decision to deny a confidential name change petition is limited to the erroneous exercise of discretion standard. *See Williams v. Racine Cnty. Cir. Ct.*, 197 Wis. 2d 841, 844-45, 541 N.W.2d 514 (Ct. App. 1995) (holding that "[i]t is within the discretion of the [circuit] court to decide whether an offered reason is sufficient cause to deny [a name change] petition" under WIS. STAT. § 786.36); *see also State v. C.G.*, 2022 WI 60, ¶85, 403 Wis. 2d 229, 976 N.W.2d 318.

¶16    "We will sustain a discretionary act if we find the [circuit] court examined the relevant facts, applied a proper standard of law, and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." *Lane v. Sharp Packaging Sys., Inc.*, 2002 WI 28, ¶19, 251 Wis. 2d 68, 640 N.W.2d 788. "It is recognized that a [circuit] court in [a proper] exercise of its discretion may reasonably reach a conclusion which another judge or another court may not reach." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

¶17    We independently consider, however, "any questions of law which may arise during our review of an exercise of discretion." *LeMere v. LeMere*, 2003

---

[4] Robert does not argue on appeal that the circuit court erred by failing to hold a hearing on Robert's petition for a confidential name change. We therefore need not address whether the court erred in that regard. We do note, however, that because the court did not hold a hearing, the factual record is not well developed, thus making appellate review more difficult.

Robert cites *Convenience Store Leasing & Management v. Annapurna Marketing*, 2019 WI App 40, ¶13, 388 Wis. 2d 353, 933 N.W.2d 110, to support his assertion that this court should review the circuit court's decision de novo. In *Annapurna*, we applied a de novo standard of review because there were not any "relevant and disputed issues of fact." *Id.* But *Annapurna* involved a different issue than the issue in this case. In *Annapurna*, the question on appeal was whether a contract's purpose had been frustrated—a mixed question of law and fact. *Id.* Because there were not any questions of fact, we applied a de novo standard of review. Here, as explained, our standard of review involves a discretionary decision. *See Williams v. Racine Cnty. Cir. Ct.*, 197 Wis. 2d 841, 844-45, 541 N.W.2d 514 (Ct. App. 1995).

WI 67, ¶14, 262 Wis. 2d 426, 663 N.W.2d 789 (citation omitted). In this appeal, the only question of law surrounds the meaning of WIS. STAT. § 786.37(4)'s evidentiary standard. "Statutory construction … is a question of law that we decide independently, owing no deference to the decisions of" the circuit court. ***Burbank Grease Servs., LLC v. Sokolowski***, 2006 WI 103, ¶13, 294 Wis. 2d 274, 717 N.W.2d 781. We therefore review de novo the meaning of § 786.37(4).

## II. Wisconsin's name change statutes

¶18 Name changes in Wisconsin are governed by WIS. STAT. §§ 786.36 and 786.37. Under § 786.36(1), "any resident of this state, whether a minor or adult, upon petition to the circuit court of the county where he or she resides and upon filing a copy of the notice required under [§] 786.37(1)," may have his or her name changed "if no sufficient cause is shown to the contrary." "Before petitioning the court to change or establish a name, the petitioner shall publish a class 3 notice under [WIS. STAT.] ch. 985 stating the nature of the petition and when and where the petition will be heard." Sec. 786.37(1). A class 3 notice requires that legal notice be published in a newspaper for three consecutive weeks, "the last of which shall be at least one week before" the name change petition is heard. WIS. STAT. §§ 985.01(1m)(a), (2); 985.07(3)(a).

¶19 A petitioner may request a confidential name change, however, in which "the clerk of court shall ensure that the name change petition is confidential upon the filing of the petition and [WIS. STAT. § 786.37](1) does not apply to the petitioner." Sec. 786.37(4). If a court determines that publication of the petition is not warranted, and it does not find "sufficient cause" to deny the name change petition, "all records related to the petitioner's name change shall be confidential and are exempt from disclosure under [WIS. STAT. §] 19.35(1)," Wisconsin's public

records law, and "[t]he court shall transmit to the register of deeds a form that states the petitioner's former name and states that the new name is confidential and may not be disclosed." *See* WIS. STAT. § 786.36(1), (2m)(a). Thereafter, the name change records "may not be disclosed by the state registrar of vital records, the register of deeds, or a local registrar." Sec. 786.36(2m)(b).

¶20 Even if a petitioner files a petition for a confidential name change, a circuit court still "may require the petitioner to comply with [WIS. STAT. § 786.37](1) if the petitioner is unable to show, by a preponderance of the evidence, that publication of his or her petition could endanger him or her and that he or she is not seeking a name change in order to avoid a debt or conceal a criminal record." Sec. 786.37(4). Furthermore, even if a court grants a confidential name change, the court still "may order disclosure of confidential information upon good cause shown and upon determining that the safety of the petitioner is not jeopardized by disclosure." WIS. STAT. § 786.36(2m)(b).

**III. The meaning of "could endanger" in WIS. STAT. § 786.37(4)**

¶21 As noted, the dispute in this case largely centers on WIS. STAT. § 786.37(4)'s evidentiary standard requiring a petitioner to show "by a preponderance of the evidence[] that publication of his or her petition could endanger him or her." The phrase "could endanger" is not defined in the statute, nor has there been any Wisconsin case construing the meaning of "could endanger" in the context of § 786.37(4).

¶22 On appeal, Robert first contends that the circuit court incorrectly required him to demonstrate that he could face physical harm—as opposed to mental or emotional harm—if his name change petition were published. Robert also claims that the court incorrectly analyzed whether publication of the name change petition

"would endanger" him—instead, he argues that he needed to show only that the danger he faced was a possibility, as evidenced by the statutory language "could endanger." Conversely, the State argues that the court correctly interpreted the statute by requiring Robert to demonstrate that physical harm was more than a mere possibility.

¶23 "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. When determining the meaning of a statute, we

> look first at the plain language of the statute, taking into consideration the context in which the provision under consideration is used. "Statutory language is given its common, ordinary, and accepted meaning." The scope, history and purpose of the statute are also "relevant to a plain-meaning interpretation of an unambiguous statute as long as [they] are ascertainable from the text and structure of the statute itself." When a word of common usage is not defined in a statute, we may turn to a dictionary to ascertain its meaning. If the language of a statute is ambiguous, we may consider extrinsic sources, such as legislative history, to aid in our analysis. However, we may consult extrinsic sources "to confirm or verify a plain-meaning interpretation."

*Burbank Grease*, 294 Wis. 2d 274, ¶14 (alteration in original; citations omitted); *see also* WIS. STAT. § 990.01(1) ("All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."). "[S]tatutes are to be interpreted 'in relation to the language of surrounding or closely-related statutes.'" *State v. Reyes Fuerte*, 2017 WI 104, ¶27, 378 Wis. 2d 504, 904 N.W.2d 773 (citation omitted).

*A. A "preponderance of the evidence" that something "could" happen means that it is more likely than not possible, not just at all possible.*

¶24    The State contends that because WIS. STAT. § 786.37(4) requires a petitioner to prove by a preponderance of the evidence that they could be endangered, "[d]emonstrating the mere possibility of endangerment" is insufficient. Conversely, Robert asserts that it is significant that the legislature used the word "could" instead of "would." According to Robert, the term "could" is used "to denote possibility." Robert contends, therefore, all that is necessary is that the petitioner demonstrate that endangerment is possible.

¶25    "Could" is a verb and the past tense of "can" and is defined as, inter alia, "may possibly." *Could & can*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993). Conversely, "would" is a verb and the past tense of "will" and is used, inter alia, "to express probability" or "inevitability." *Would & will*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993). "[P]reponderance of the evidence" means "more likely than not." *See **State v. Rodriguez***, 2007 WI App 252, ¶18, 306 Wis. 2d 129, 743 N.W.2d 460.

¶26    If correct, Robert's interpretation of WIS. STAT. § 786.37(4) would mean that a petitioner must simply demonstrate that there is any possibility of endangerment. In a similar "semantic puzzle," a justice on our supreme court noted that "[t]here is an obvious tension in requiring proof that an event is 'more likely than not to happen' when the fact to be proved is that the event is 'sure to happen.'" *See **State v. Jackson***, 2016 WI 56, ¶147 & n.50, 369 Wis. 2d 673, 882 N.W.2d 422 (Abrahamson, J., dissenting) (discussing the inevitable discovery doctrine). While we agree that we cannot ignore the legislature's use of the word "could," Robert's interpretation would essentially erase the requirement that a petitioner prove endangerment by a preponderance of the evidence because anything is "possible."

*See **Heritage Farms, Inc. v. Markel Ins. Co.***, 2009 WI 27, ¶14 n.9, 316 Wis. 2d 47, 762 N.W.2d 652 ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." (citation omitted)).

¶27    In most statutory situations governed by a preponderance of the evidence standard, the burden is on a party to demonstrate that something "was" or "is" true. *See, e.g.*, WIS. STAT. § 132.033(2)(a) (burden is on individual to prove by a preponderance of the evidence that a defendant "*engaged*" in a violation (emphasis added)); WIS. STAT. § 938.34(16) (court may not impose an original dispositional order "unless the court finds by a preponderance of the evidence that the juvenile *has violated* a condition of his or her dispositional order" (emphasis added)); WIS. STAT. § 895.047(2)(a)2. (seller or distributer of product not liable for strict liability claim unless, inter alia, "claimant proves by a preponderance of the evidence that neither the manufacturer nor its insurance *is* subject to service of process within" Wisconsin (emphasis added)).

¶28    Under WIS. STAT. § 786.37(4), however, we conclude that the burden is on a petitioner to demonstrate the likelihood of a future event, and he or she must demonstrate that it is more likely than not that future endangerment is possible.

### B.    *"[E]ndanger" means physical harm, not mental or emotional harm.*

¶29    Robert relies on dictionary definitions of the terms "endanger" and "danger" to support his interpretation that the term "endanger" can refer to a risk of physical, mental, or emotional harm. Conversely, citing WIS. STAT. § 19.35(1), Wisconsin's public records law, the State argues that "endanger" refers only to a risk of physical harm. Both parties also point us to different case law interpreting the term "endanger" in different contexts.

¶30    "Endanger" is defined as "bring[ing] into danger or peril of probable harm or loss." *Endanger*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993). The related term "endangerment" means "[t]he act or … instance of putting someone or something in danger; exposure to peril or harm." *Endangerment*, BLACK'S LAW DICTIONARY (11th ed. 2019). We have explained that the definition of "endanger" "clearly encompasses not only those situations where past conduct [occurred], but also those situations where conduct can be anticipated." *See* ***Z.E. v. State***, 163 Wis. 2d 270, 275, 471 N.W.2d 519 (Ct. App. 1991) (interpreting WIS. STAT. § 48.13(10)'s use of "seriously endanger"). "Danger" is defined as "the state of being exposed to harm: liability to injury, pain, or loss," *danger*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993), or as "[p]eril; exposure to harm, loss, pain or other negative result," *danger*, BLACK'S LAW DICTIONARY (11th ed. 2019).

¶31    Because the dictionary definitions of "endanger" and "danger" do not directly answer the question of whether WIS. STAT. § 786.37(4) requires only a showing of a risk of physical harm, or also may include a risk of mental or emotional harm, we turn to "closely-related statutes." *See* ***Kalal***, 271 Wis. 2d 633, ¶46. "Statutes are closely related when they are in the same chapter, reference one another, … use similar terms[,]" or are in "the same statutory scheme." ***Reyes Fuerte***, 378 Wis. 2d 504, ¶27.

¶32    We begin by considering WIS. STAT. § 786.36's relation to WIS. STAT. § 786.37(4). As outlined previously, if a circuit court allows a petitioner's name change petition to be confidential, "all records related to the petitioner's name change shall be confidential and are exempt from disclosure under [WIS. STAT. §] 19.35(1)." Sec. 786.36(2m)(a). The records then cannot "be disclosed by the state registrar of vital records, the register of deeds, or a local registrar."

Sec. 786.36(2m)(b).    But, "[a] court may order disclosure of confidential information upon good cause shown and upon determining that the *safety of the petitioner* is not jeopardized by disclosure." *Id.* (emphasis added).  "Jeopardize" is synonymous with "endanger." *Endanger*, MERRIAM-WEBSTER THESAURUS (2005). "Safety" is defined as "freedom from exposure to danger: exemption from hurt, injury, or loss." *Safety*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993). Safety clearly connotes physical harm only.

¶33    We next consider WIS. STAT. § 786.36(2m)(a) in relation to WIS. STAT. § 19.35(1)(am).[5]   Section 19.35(1)(am) provides that the right to inspect personally identifiable information does not apply to "[a]ny record containing personally identifiable information that, if disclosed, would do any of the following:"

> a. Endanger an individual's life or safety.
>
> b. Identify a confidential informant.
>
> c. Endanger the security, including the security of the population or staff, of any state prison … jail, … secured residential care center for children and youth, … mental health institute, … center for the developmentally disabled, … or facility … for the institutional care of sexually violent persons.

Sec. 19.35(1)(am)2.

---

[5] We acknowledge that WIS. STAT. §§ 786.37(4) and 19.35(1)(am)2. are different standards and we simply cite to § 19.35(1)(am)2. in this context to demonstrate that "could endanger" in § 786.37(4) does not mean a mere possibility of physical harm.  Instead, "could endanger" in § 786.37(4) means the burden is on a petitioner to demonstrate it is more likely than not that future physical endangerment is possible.  One notable difference between the two statutes is that a petitioner bears the burden under § 786.37 to demonstrate the likelihood of a future event by a preponderance of the evidence, while § 19.35(1)(am)2. lacks that same burden.  As such, we do not find § 19.35(1)(am)2.'s use of "would"—as opposed to "could"—material to this case or § 786.37(4).

¶34    The use of the word "safety" in both WIS. STAT. §§ 786.36(2m)(b) and 19.35(1)(am)2. leads us to conclude that WIS. STAT. § 786.37(4) requires a showing of a risk of physical harm.  Section 19.35(1)(am)2.'s use of "endanger" clearly covers only physical harm, and not emotional or mental harm due to the statute's reference to "life or *safety*" and "security."  (Emphasis added.)  Similarly, § 786.36(2m)(b) states that disclosure of confidential information can occur only if, among other things, the "*safety* of the petitioner is not jeopardized," which indicates that a risk of physical harm is required.  (Emphasis added.)

¶35    Robert responds to the State's reliance on WIS. STAT. § 19.35(1)(am)2. by arguing that WIS. STAT. § 786.36(2m)(a)'s cross-reference to the public records law "was necessary to ensure that confidential name-change records would not be open to public inspection.  There is no reason to import anything from the [p]ublic [r]ecords [l]aw."  We disagree.  While § 19.35(1)(am)2. uses the phrase "would … [e]ndanger"—as opposed to "could endanger"—and therefore constitutes a different standard, *see supra* n.5, both § 19.35(1)(am)2. and WIS. STAT. § 786.37(4) use the same word "endanger."  We therefore can conclude that the legislature's use of "endanger" in § 786.37(4) was deliberate and was intended to encompass only a risk of physical danger, as in § 19.35(1)(am)2.

¶36    The common law definition afforded to "danger" buttresses our conclusion.  In ***B.M. v. State***, 101 Wis. 2d 12, 16-17, 303 N.W.2d 601 (1981), our supreme court considered the meaning of "danger" as used in WIS. STAT. § 938.34(4d)(b).  That statute states that a juvenile may be placed in a secured correctional facility if, as relevant here, he or she is a "danger to the public."[6]

---

[6] 1995 Wis. Act 77 repealed WIS. STAT. § 48.34(4m)(b) and created WIS. STAT. § 938.34(4m)(b), but the language "danger to the public" is the same in both the old version and new version of the statute.

Sec. 938.34(4d)(b). Using the plain meaning of danger, defined as "the state of being exposed to harm, liability to injury, pain or loss[,]" the court concluded that "[w]hile the terms 'injury' and 'pain' are ordinarily limited to physical harm, 'loss' is defined in terms of property." ***B.M.***, 101 Wis. 2d at 18.

¶37 Robert argues that ***B.M.*** discusses the definitions of "injury" and "pain," but not of "harm." For that definition, Robert relies on the dictionary, which defines "harm" as "physical or mental damage: injury." *Harm*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993). We also note that "harm" can be defined as "[i]njury, loss, damage; material or tangible detriment." *Harm*, BLACK'S LAW DICTIONARY (11th ed. 2019). Robert also compares "could endanger" with the standard used in WIS. STAT. § 48.13(10), which grants a circuit court jurisdiction over a child if, among other things, "[t]he child's parent, guardian or legal custodian neglects, refuses or is unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to *seriously endanger the physical health* of the child." (Emphasis added.) According to Robert, "The [l]egislature could have added 'seriously' as a modifier or specified actual physical harm in the confidential name change statute … if that was its intent."

¶38 We disagree with Robert's arguments. Prior to 2012, name change petitions *had* to be published pursuant to WIS. STAT. ch. 985. However, the legislature added the confidentiality exception through 2011 Wis. Act 274. In the process of drafting the confidentiality exception, Wisconsin State Representative Keith Ripp's office[7] stated in correspondence to the bill's drafters that "the intent of the [bill] is to allow a victim of domestic abuse to petition the court for an

---

[7] Representative Ripp was one of the legislators who introduced the bill that later became 2011 Wis. Act 274.

exemption" to publication of a name change petition. *See* Legislative Reference Bureau Drafting File for 2011 Wis. Act 274; *see also* **Kalal**, 271 Wis. 2d 633, ¶69 (Abrahamson, C.J., concurring) ("Bill Drafting Records … are by-products of the drafting process and are not designed to document legislative intent, [but] may indicate legislative intent, and bill drafting records … have often been used by courts."); **Burbank Grease**, 294 Wis. 2d 274, ¶14 ("[W]e may consult extrinsic sources 'to confirm or verify a plain-meaning interpretation.'" (citation omitted)). The intention behind the legislation—i.e., to provide an avenue for a confidentiality exception for "domestic abuse" victims—confirms that "endanger" deals with physical harm, not emotional or mental harm. *See* WIS. STAT. § 968.075(1)(a) ("[d]omestic abuse" requires an act resulting in (1) "[i]ntentional infliction of physical pain, physical injury or illness"; (2) "[i]ntentional impairment of physical condition"; (3) sexual assault; or (4) "[a] physical act that may cause the other person reasonably to fear imminent engagement in the conduct described" in (1)-(3)).

¶39    We therefore agree with the State's interpretation, and we conclude that the term "endanger" in WIS. STAT. § 786.37(4) refers to a risk of physical harm. In total, we hold that § 786.37(4)'s requirement that a petitioner prove "by a preponderance of the evidence[] that publication of his or her petition could endanger him or her" means that the petitioner must prove it is more likely than not that the petitioner could be physically endangered if the name change petition is published. In the context of the whole sentence and given the express use of the preponderance of the evidence standard in relation to the term "could," "could" does not mean that there is merely *any* possibility of endangerment. "Could" simply denotes a possible future event.

17

¶40    In support of his interpretation of WIS. STAT. § 786.37(4), Robert cites the public policy surrounding protecting the identity of minors in Wisconsin. Namely, Robert cites the confidentiality provisions in WIS. STAT. §§ 48.93(1d) (records relating to adoptions), 48.396(2)(a) (records relating to the children's code), and 767.853 (records relating to paternity actions). We agree with the State that Robert's arguments based on public policy are unpersuasive because the legislature did not provide a different level of privacy for minors involved in name change petitions under WIS. STAT. §§ 786.36 and 786.37. The standard for allowing a confidential name change is the same whether the petitioner is a minor or whether the petitioner is an adult.[8]

## IV. The circuit court's decision to deny the name change petition

¶41    Having determined the meaning of WIS. STAT. § 786.37(4)'s "could endanger" standard, we must now consider whether the circuit court erroneously exercised its discretion by denying Robert's confidential name change petition. As previously outlined, the statute required Robert "to show, by a preponderance of the evidence, that publication of his … petition could endanger him … and that he … is not seeking a name change in order to avoid a debt or conceal a criminal record."[9] *See* § 786.37(4). Again, a preponderance of the evidence is something that is "more likely than not." ***Rodriguez***, 306 Wis. 2d 129, ¶18.

---

[8] We are also unpersuaded by Robert's citation to confidential name change cases from other jurisdictions because those cases interpreted different statutory language.

[9] The State does not seriously contend that Robert is "seeking a name change in order to avoid a debt or conceal a criminal record." *See* WIS. STAT. § 786.37(4). Nor is there evidence of such motive in the record. In fact, the only evidence in the record regarding either situation is that Robert does not have any personal debt, nor does he have a criminal record. We therefore conclude that Robert proved by a preponderance of the evidence that he is seeking a name change for reasons unrelated to avoiding debt or concealing a criminal record.

¶42 On appeal, we agree with both parties that the circuit court interpreted "endanger" as requiring Robert to demonstrate that he could face physical harm. While the court stated that Robert had not provided evidence that he would be "subject … to harassment and/or intimidation," the court did not discuss Robert's emotional or mental well-being in its conclusion.

¶43 Robert does not advance a position on the circuit court's interpretation of the "could" standard that he was required to meet. We note that the court stated at one point that the proper legal test was whether publication "would endanger the individual"—as opposed to "could endanger." But, the court correctly noted the standard at the start of its decision, stating that the question before it was whether "publication of the petition could endanger" Robert "because the name change is for a gender transition." Taking a closer look at the court's decision, it is clear that the court ultimately applied the correct standard. For example, the court concluded that the standard name change petition procedure "does not provide a danger" to Robert. In other words, the court concluded that Robert did not meet his burden of demonstrating that publication of his name change petition could more likely than not lead to physical endangerment.

¶44 We also conclude that the circuit court did not erroneously exercise its discretion by denying Robert's confidential name change petition. Again, our review of the court's decision is a limited one. "We will not reverse a discretionary determination … if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision." *Sukala v. Heritage Mut. Ins. Co.*, 2005 WI 83, ¶8, 282 Wis. 2d 46, 698 N.W.2d 610 (citation omitted). "We cannot search the record to find reasons to overturn [a court's] discretionary decision[]." *State v. X.S.*, 2022 WI 49, ¶53, 402 Wis. 2d 481, 976 N.W.2d 425

(citation omitted). In fact, "we generally look for reasons to sustain discretionary determinations." *Sukala*, 282 Wis. 2d 46, ¶8 (citation omitted).

¶45    The circuit court first determined that Robert had failed to show it was more likely than not that some members of his family could endanger him if his name change petition were published. This conclusion is supported by the record. Although Robert alleged that some members of his family "criticized" him and his mother, and even "cut off contact" with them because of Robert's gender identity, he did not allege, or provide evidence, that members of his family had endangered his physical safety in the past or could do so in the future. Furthermore, as the court noted, Robert's family is already aware of his gender identity, and, therefore, publication of his name change petition in this regard could not likely endanger him further.

¶46    The circuit court also determined that because Robert "is already using the name [Robert] … at school and in personal dealings[,]" and because Robert now has the "physical appearance … of a 17 year old boy, … anyone who has contact with [Robert] already knows that [he] is in gender transition and uses a male name." Robert contends on appeal that the court erroneously exercised its discretion in reaching this conclusion. Robert asserts that publication "inevitably means additional members of the public will know [Robert] is transgender and that increases the risk of harm."

¶47    While a reasonable judge or court could agree with Robert's argument and come to a different conclusion than the circuit court did here, that is not the standard of review we apply to a confidential name change petition. *See Hartung*, 102 Wis. 2d at 66. The court could reasonably conclude that all of Robert's cited physical attacks were by individuals who already knew his gender identity. In other

20

words, under the court's reasoning, it is not more likely than not that publication of Robert's name change petition could endanger him in the future, given that the individuals who have physically harmed Robert in the past already know of his gender identity and thus would not be influenced by the publication of the petition.

¶48 At the circuit court, Robert cited multiple reports on violence toward transgender individuals and cited to *Whitaker v. Kenosha Unified School District No. 1 Board of Education*, 858 F.3d 1034, 1051 (7th Cir. 2017), *abrogated on other grounds by Illinois Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020), for the proposition that transgender individuals experience "discrimination, harassment, and violence because of their gender identity." It is clear that the circuit court did not find Robert's citations to authority discussing general violence toward transgender individuals—which pertains to events that did not involve him—persuasive. And again, while a reasonable judge or court could find Robert's citations persuasive, the court here could also reasonably find the citations unpersuasive because the events recounted in the cited authorities did not occur to Robert, and it was not likely they could occur to Robert. *See Hartung*, 102 Wis. 2d at 66.

## CONCLUSION

¶49 A petitioner seeking a confidential name change must file a petition alleging that publication of his or her name could endanger him or her, and state the basis for that allegation. A circuit court in its discretion determines whether the petitioner makes a sufficient showing of endangerment: whether the petitioner proves that it is more likely than not that he or she could be—a possibility of a future event—physically endangered if the name change petition is published. If the petitioner fails to do so, the court "may require the petitioner to comply with [WIS.

21

STAT. § 786.37](1)." Again, our review of a court's decision to deny a confidential name change is limited to an erroneous exercise of discretion. *See **Williams***, 197 Wis. 2d at 844-45. In this case, the circuit court did not erroneously exercise its discretion by finding that Robert failed to meet that burden. We affirm.

*By the Court.*—Order affirmed.